**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JERRY QUINN, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| READY CAPITAL CORPORATION, THOMAS E. CAPASSE, and ANDREW AHLBORN, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Jerry Quinn ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Ready Capital Corporation ("Ready Capital" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Ready Capital; and (c) review of other publicly available information concerning Ready Capital.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Ready Capital common stock between November 7, 2024 and March 2, 2025 inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Ready Capital is a real estate finance company which originates, acquires, finances, and services lower-to-middle-market ("LLM") commercial real estate ("CRE") loans, small business administration loans, residential mortgage loans, and other real estate-related investments.

3.      On March 3, 2025, before the market opened, Ready Capital announced its fourth quarter and full year 2024 financial results, reporting fourth quarter 2024 net loss of $1.80 per share and full year 2024 net loss of $2.52 per share. The Company explained had to take ***"decisive actions to stabilize"*** its ***"balance sheet*** going forward by ***fully reserving for all of our non-performing loans in our CRE portfolio."*** This included, among other actions, taking $284 million in combined Current Expected Credit Loss ("CECL") and valuation allowances in order to mark

the Company's non-performing loans to current values. The Company further revealed that its total leverage increased to "3.8x," up from the prior quarter's total leverage of "3.3x."

4.    On this news, Ready Capital's stock price fell $1.86, or 26.8%, to close at $5.07 per share on March 3, 2025, on unusually heavy trading volume.

5.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that significant non-performing loans in its CRE portfolio were not likely to be collectible; (2) that Ready Capital would fully reserve these problem loans in order to "stabilize" its CRE portfolio; (3) that this was not accurately reflected in Ready Capital's current expected credit loss or valuation allowances; (4) that, as a result, the Company's financial results would be adversely affected; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.      Plaintiff Jerry Quinn, as set forth in the accompanying certification, incorporated by reference herein, purchased Ready Capital common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.      Defendant Ready Capital is incorporated under the laws of Maryland with its principal executive offices located in New York, New York. Ready Capital's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "RC."

13.      Defendant Thomas E. Capasse ("Capasse") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.      Defendant Andrew Ahlborn ("Ahlborn") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.      Defendants Capasse and Ahlborn (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of

3

the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

### SUBSTANTIVE ALLEGATIONS

### Background

16.    Ready Capital is a real estate finance company which originates, acquires, finances, and services lower-to-middle-market (LLM) commercial real estate (CRE) loans, small business administration loans, residential mortgage loans, and other real estate-related investments.

### Materially False and Misleading

### Statements Issued During the Class Period

17.    The Class Period begins on November 7, 2024.[1] On that date, Ready Capital issued a press release announcing its financial results for the quarter ended September 30, 2024. The press release touted the Company's third quarter highlights, and finanical results, including its purported "***net book value of $12.59 per share,***" as well as its CECL reserve and valuation allowance activity. Specifically the press release stated as follows, in relevant part:

### Third Quarter Highlights

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

• Lower-to-Middle Market originations of $246 million

• Record Small Business Lending loan originations of $440 million, including $355 million of Small Business Administration 7(a) loans

• ***Net book value of $12.59 per share*** of common stock as of September 30, 2024

• Declared and paid dividend of $0.25 per share

• Strengthened the Small Business Lending platform with the acquisition of Funding Circle USA, Inc.

*            *            *

The table below reconciles Net Income computed in accordance with U.S. GAAP to Distributable Earnings.

| (in thousands) | Three Months Ended September 30, 2024 |
|---|---:|
| **Net Loss** | $ (7,279) |
| **Reconciling items:** | |
| Unrealized loss on joint ventures | 2,173 |
| Increase in CECL reserve | 52,442 |
| Decrease in valuation allowance | (71,060) |
| Non-recurring REO impairment | 525 |
| Non-cash compensation | 1,916 |
| Merger transaction costs and other non-recurring expenses | 4,070 |
| Bargain purchase gain | (32,165) |
| Realized losses on sale of investments | 109,675 |
| **Total reconciling items** | $ 67,576 |
| Income tax adjustments | (13,739) |
| **Distributable earnings before realized losses** | $ 46,558 |
| Realized losses on sale of investments, net of tax | (89,072) |
| **Distributable earnings** | $ (42,514) |
| Less: Distributable earnings attributable to non-controlling interests | 1,766 |
| Less: Income attributable to participating shares | 2,241 |
| **Distributable earnings attributable to common stockholders** | $ (46,521) |
| **Distributable earnings before realized losses on investments, net of tax per common share - basic and diluted** | $ 0.25 |
| **Distributable earnings per common share - basic and diluted** | $ (0.28) |

18.    On the same date, November 7, 2024, Ready Capital published supplemental financial information related to the its financial results for the quarter ended September 30, 2024. The supplemental financial data touted the Company's purported finanical results, including the Company's alleged net book value of $12.59 and "total leverage of 3.3x and recourse leverage ratio of 1.0x."

5

19.     On November 8, 2024, the Company held an earnings call related to its third quarter 2024 finanical results. During the earnings call, Defendant Capasse offered prepared remarks in which he stated the Company's "***CRE portfolio is showing stabilizing credit metrics***." Defendant Capasse continued, asserting that the "growing earnings contribution" of the Company's Small Business Lending segment "along with ***normalization of our CRE business to historical levels should support a longer-term ROE premium to our peer group.***" Defendant Capasse concluded that "***Ready Capital is well positioned to capitalize on the tailwinds in the CRE market***" naming its "***stabilizing CRE platform***" as among the "***key drivers***" of the Company's earnings growth. Defendant Capasse further stated the Company's "***leverage position remains conservative***" with a "***total leverage of 3.3 times is below [the Company's] long-term target of four times.***" During the question and answer portion of the earnings call, Defendant Capasse was asked by an analyst to clarify if the Company was "through the worst of the commercial real-estate cycle for Ready Capital?" to which Capasse responded:

> ***Yes,*** we're definitively seeing as evidenced by Adam's comments in terms of the kind of sawtooth down in the absolute dollar delinquencies, and what we're seeing in terms of the migration of the four or five assets as it relates to the originated portfolio, it definitely is mirroring the what you're seeing in terms of the macro data in the multi-family sector.

20.     On November 12, 2024, the Company submitted its quarterly report for the period ended September 30, 2024, on a Form 10-Q filed with the SEC, affirming the previously reported financial results (the "3Q24 10-Q"). The 3Q24 10-Q purported to describe the Company's LMM CRE Segment Results as follows, in relevant part:

> ***LMM Commercial Real Estate Segment Results.***

6

***Q3 2024 versus Q3 2023.*** Interest income of $193.3 million represented a decrease of $26.2 million, primarily due to  decreased loan balances, partially offset by increases in interest rates. Interest expense of $150.5 million represented a  decrease of $18.5 million, driven by decreased debt balances, partially offset by increases in interest rates. Provision for  loan losses of $49.2 million represented an increase of $63.7 million, primarily due to an increase in asset specific  reserves. Non-interest loss of $19.1 million represented an increase of $50.5 million, primarily due to net realized losses  on financial instruments and real estate owned, partially offset by a decrease in the valuation allowance related to the  transfer of Loans, net to Loans, held for sale in the first half of 2024. Non-interest expense of $21.1 million represented a  decrease of $8.6 million, due to a decrease in employee compensation and benefits and loan servicing expenses.

21.     The 3Q24 10-Q also contained Management's Discussion and Analysis of Financial Condition and Results of Operations which reported the Company's "critical accounting estimates" and alleged that the Company's "allowance for credit losses" ***"are reviewed quarterly considering credit quality indicators."*** Specifically, the 3Q24 10-Q stated as follows, in relevant part:

**Critical Accounting Estimates** Our consolidated financial statements are prepared in accordance with GAAP, which requires the use of estimates and  assumptions that affect the reported amounts of assets and liabilities as of the date of the consolidated financial  statements and the reported amounts of revenues and expenses during the reporting period. We believe that all of the  decisions and assessments upon which our consolidated financial statements are based were reasonable at the time made,  based upon information available to us at that time. The following discussion describes the critical accounting estimates  that apply to our operations and require complex management judgment. This summary should be read in conjunction  with our accounting policies and use of estimates included in "Notes to Consolidated Financial Statements, Note 3 –  Summary of Significant Accounting Policies" included in Item 8, "Financial Statements and Supplementary Data," in the  Company's Form 10-K.

   ***Allowance for credit losses*** **The allowance for credit losses consists of the allowance for losses on loans and lending commitments accounted for at amortized cost. Such loans and lending commitments are reviewed quarterly considering credit quality indicators,  including probable and historical losses, collateral values, LTV ratio and economic conditions.** The allowance for credit losses increases through provisions charged to earnings and reduced by charge-offs, net of recoveries.

We utilize loan loss forecasting models for estimating expected life-time credit losses, at the individual loan level, for its  loan portfolio. The Current Expected Credit Loss ("CECL") forecasting methods used by the Company include (i) a probability of default and loss given default method using underlying third-party

CMBS/CRE loan database with historical loan losses and (ii) probability weighted expected cash flow method, depending on the type of loan and the availability of relevant historical market loan loss data. We might use other acceptable alternative approaches in the future depending on, among other factors, the type of loan, underlying collateral, and availability of relevant historical market loan loss data.

We estimate the CECL expected credit losses for our loan portfolio at the individual loan level. Significant inputs to our forecasting methods include (i) key loan-specific inputs such as LTV, vintage year, loan-term, underlying property type, occupancy, geographic location, and others, and (ii) a macro-economic forecast. These estimates may change in future periods based on available future macro-economic data and might result in a material change in our future estimates of expected credit losses for its loan portfolio

22.    On November 25, 2024 the Company published its November 2024 investor presentation. The investor presentation touted the Company's strong market position due to its LMM CRE portfolio, as well as its "[c]onservative approach to credit" with only "< 5bps losses incurred on new originations since the company's start." The investor presentation further touted the Company's "finanical flexibility" including its "total leverage of 3.3x."

23.    The above statements identified in ¶¶ 17-22 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that significant non-performing loans in its CRE portfolio were not likely to be collectible; (2) that Ready Capital would fully reserve these problem loans in order to "stabilize" its CRE portfolio; (3) that this was not accurately reflected in Ready Capital's current expected credit loss or valuation allowances; (4) that, as a result, the Company's financial results would be adversely affected; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

24.     On March 3, 2025, before the market opened, Ready Capital issued a press release announcing the Company's fourth quarter and full year 2024 financial results, reporting fourth quarter 2024 net loss of $1.80 per share and full year 2024 net loss of $2.52 per share. The press release explained the Company had to take ***"decisive actions to stabilize" its "balance sheet*** going forward ***by fully reserving for all of our non-performing loans in our CRE portfolio."*** This included taking approximately $382 million in reconciling items, including $284 million in combined CECL and valuation allowances, in order to mark the Company's non-performing loans to current values. This action significantly reduced the Company's book value per share to $10.61 compared to the prior quarter's $12.59.  Specifically, the press release stated, in relevant part:

**READY CAPITAL CORPORATION REPORTS FOURTH QUARTER 2024 RESULTS AND DECLARES FIRST QUARTER 2025 DIVIDENDS**

*- GAAP LOSS PER COMMON SHARE FROM CONTINUING OPERATIONS OF $(1.80) -*

*- DISTRIBUTABLE LOSS PER COMMON SHARE OF $(0.03) -*

*- DISTRIBUTABLE EARNINGS PER COMMON SHARE BEFORE REALIZED LOSSES OF $0.23 -*

*- DISTRIBUTABLE RETURN ON AVERAGE STOCKHOLDERS' EQUITY BEFORE REALIZED LOSSES OF 7.1% -*

*- DECLARED A QUARTERLY CASH DIVIDEND OF $0.125 PER SHARE OF COMMON STOCK AND OPERATING PARTNERSHIP UNIT FOR THE QUARTER ENDING MARCH 31, 2025 -*

New York, New York, March 3, 2025 / Globe Newswire / – Ready Capital Corporation ("Ready Capital" or the "Company") (NYSE: RC), a multi-strategy real estate finance company that originates, acquires, finances, and services lower-to-middle-market ("LMM") investor and owner-occupied commercial real estate loans, today reported financial results for the quarter ended December 31, 2024 and declared dividends for the quarter ending March 31, 2025.

"The fourth quarter closes out a year of mixed results. On one hand, our Small Business Lending segment performed well, with significant origination growth reflecting the benefits of past investments. Meanwhile, our multi-family lending

focused business faced challenges from higher rates, inflationary pressures, and lower rent growth," said Thomas Capasse, Ready Capital's Chairman and Chief Executive Officer. ***"Entering 2025, we have taken decisive actions to stabilize and better position our balance sheet going forward by fully reserving for all of our non-performing loans in our CRE portfolio.*** While this reduces our book value per share in the short term, we believe it provides a path to recovery in our net interest margin through the accelerated resolution of our non-performing loans to generate liquidity for reinvestment in higher-yielding new originations. Additionally, we have adjusted our dividend to $0.125 per share to align with anticipated cash earnings to preserve capital for reinvestment and share repurchases with potential upward bias co-incident with the recovery in earnings. We believe these actions will enable the Company to resume growth in both book value per share and the dividend as we move forward."

**Fourth Quarter Highlights**

• LMM commercial real estate originations of $436 million

• Small Business Lending ("SBL") loan originations of $348 million, including $315 million of Small Business Administration 7(a) loans

• Book value of $10.61 per share of common stock as of December 31, 2024

• Entered into a definitive merger agreement to acquire United Development Funding IV, a real estate investment trust providing capital solutions to residential real estate developers and regional homebuilders

• Acquired approximately 5.8 million shares of the Company's common stock at an average price of $7.35 per share as part of stock repurchase program

• Issued $130 million in aggregate principal amount of 9.00% Senior Unsecured Notes due 2029

**Full Year Highlights**

• ***GAAP Loss per common share from continuing operations of $(2.52)***

• Distributable earnings per common share before realized losses of $0.97

• Distributable return on average stockholders' equity before realized losses of 7.5%

• Total LMM and SBL originations of $2.4 billion, including $1.1 billion of Small Business Administration 7(a) loans

• Sold $7.6 billion in mortgage servicing rights in connection with the disposition of its residential mortgage banking segment

• Completed the acquisitions of Madison One, a leading originator and servicer of USDA and SBA guaranteed loan product, and Funding Circle USA, Inc., an online lending platform that originates and services small business loans

• Acquired approximately 10.3 million shares of the Company's common stock at an average price of $7.95 per share as part of stock repurchase program

25.    On the same date, March 3, 2025, the Company held an earnings call in connection with these fininical results. During the earnings call, Defendant Capasse stated that the Company has "undertaken … aggressive actions to reset the balance sheet and go-forward earnings profile," including ***"a $284 million combined CECL and valuation allowances, which marks 100% of our non-performing loans to current values*.**"

26.    On this news, Ready Capital's stock price fell $1.86, or 26.8%, to close at $5.07 per share on March 3, 2025, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Ready Capital common stock between November 7, 2024 and March 2, 2025, inclusive , and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

28.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Ready Capital's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Ready Capital shares were traded

publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Ready Capital or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

30.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

31.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Ready Capital; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

32.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

33.    The market for Ready Capital's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Ready Capital's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Ready Capital's securities relying upon the integrity of the market price of the Company's securities and market information relating to Ready Capital, and have been damaged thereby.

34.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Ready Capital's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Ready Capital's business, operations, and prospects as alleged herein.

35.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ready Capital's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants'

materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

36.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

37.    During the Class Period, Plaintiff and the Class purchased Ready Capital's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

38.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Ready Capital, their control over, and/or receipt and/or modification of Ready Capital's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Ready Capital, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

## (FRAUD-ON-THE-MARKET DOCTRINE)

39.     The market for Ready Capital's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Ready Capital's securities traded at artificially inflated prices during the Class Period. On December 2, 2024, the Company's share price closed at a Class Period high of $7.57 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Ready Capital's securities and market information relating to Ready Capital, and have been damaged thereby.

40.     During the Class Period, the artificial inflation of Ready Capital's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ready Capital's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Ready Capital and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

41.     At all relevant times, the market for Ready Capital's securities was an efficient market for the following reasons, among others:

(a)     Ready Capital shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Ready Capital filed periodic public reports with the SEC and/or the NYSE;

(c)     Ready Capital regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Ready Capital was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

42.     As a result of the foregoing, the market for Ready Capital's securities promptly digested current information regarding Ready Capital from all publicly available sources and reflected such information in Ready Capital's share price. Under these circumstances, all purchasers of Ready Capital's securities during the Class Period suffered similar injury through their purchase of Ready Capital's securities at artificially inflated prices and a presumption of reliance applies.

43.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable

investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

44.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Ready Capital who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

45.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

46.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Ready Capital's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

47.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Ready Capital's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

48.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Ready Capital's financial well-being and prospects, as specified herein.

49.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Ready Capital's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Ready Capital and its business operations

and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

50.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

51.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Ready Capital's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations,

financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

52.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Ready Capital's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Ready Capital's securities during the Class Period at artificially high prices and were damaged thereby.

53.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Ready Capital was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Ready Capital securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

54.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

56.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

57.     Individual Defendants acted as controlling persons of Ready Capital within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

59.     As set forth above, Ready Capital and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:   March 6, 2025                       */s/ Rebecca Dawson*
                                             **GLANCY PRONGAY & MURRAY LLP**
                                             Rebecca Dawson
                                             230 Park Ave, Suite 358
                                             New York, New York 10169
                                             Telephone: (213) 521-8007
                                             Facsimile: (212) 884-0988
                                             Email: rdawson@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Counsel for Plaintiff Jerry Quinn*

## SWORN CERTIFICATION OF PLAINTIFF

Ready Capital Corporation, SECURITIES LITIGATION

I,         Jerry Quinn                     , certify:

1. I have reviewed the Complaint, adopt its allegations, and authorize its filing and/or the filing of a lead plaintiff motion on my behalf.

2. I did not purchase Ready Capital Corporation, the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Ready Capital Corporation, during the class period set forth in the Complaint are as follows:

        See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

3/4/2025

Dated: _____

DocuSigned by:

CDE13A601E074E0...

Jerry Quinn

**Jerry Quinn's Transactions in Ready Capital Corporation (RC)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 12/16/2024 | Bought | 8,677.000 | $7.4800 |
| 12/16/2024 | Bought | 1,323.000 | $7.4800 |
| 1/31/2025 | Bought | 370.944 | $6.7400 |