**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE READY CAPITAL CORPORATION SECURITIES LITIGATION | Case No. 1:25-cv-01883-PAE |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' <u>MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT. ................................................................................................ 1

II.  FACTUAL BACKGROUND. ............................................................................................... 3

    A.  The Massive Construction Loan. ......................................................................... 3

    B.  Loan Amendments Concealed "Catastrophic" Issues. ........................................ 3

    C.  August 2024 – November 2024: The Strategic Default and Defendants' Misstatements. . 5

    D.  March 3, 2025 – The Fraud is Revealed. ............................................................. 7

III.  LEGAL STANDARD. ....................................................................................................... 7

IV.  ARGUMENT ...................................................................................................................... 8

    A.  Plaintiff Adequately and Plausibly Alleges Material Misstatements and Omissions. ........ 8

        1.  Defendants' Misstatements were Contemptuously False and Misleading. ..................... 8

        2.  Defendants' Credit Losses and Financial Misstatements are Actionable. .................... 11

        3.  Zausmer Made Materially False Statements. ................................................................. 17

        4.  The "Improving Credit", "Clear Out", and "Onetime Item" Misstatements are Actionable. ........ 18

        5.  The Safe Harbor is Inapplicable to Defendants' Misstatements. ................................. 20

    B.  The Amended Complaint Pleads a Strong Inference of Scienter. ..................................... 21

        1.  Plaintiff Alleges Strong Circumstantial Evidence of Knowledge and Recklessness.... 21

        2.  Confidential Witnesses Corroborate Defendants' Knowledge ...................................... 23

3.    The "Core Operations" Doctrine Supports a Strong Inference of Scienter. ................. 24

C.    The Amended Complaint Adequately Alleges Loss Causation. ...................................... 25

D.    Plaintiff has Adequately Alleged a Claim under Section 20(a) ...................................... 25

V.    CONCLUSION. .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*ADL, LLC v. Tirakian*,

   No. CV 2006-5076, 2010 WL 3925131 (E.D.N.Y. Aug. 26, 2010), *report and recommendation*

   *adopted*, No. 06 CV 5076 SJF MDG, 2010 WL 3926135 (E.D.N.Y. Sept. 29, 2010).............. 19

*AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec.*, LLC,

   No. 01 CIV. 11448 (JGK), 2005 WL 2385854 (S.D.N.Y. Sept. 26, 2005) .............................. 10

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,

   19 F.4th 145 (2d Cir. 2021) ..................................................................................................... 7

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,

   324 F. Supp. 2d 474 (S.D.N.Y. 2004) ................................................................................... 24

*In re Avon Sec. Litig.*,

   No. 19 CIV. 01420 (CM), 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019)........................... 21, 24

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,

   390 F. Supp. 3d 432 (S.D.N.Y. 2019) ................................................................................... 21

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,

   763 F. Supp. 2d 423 (S.D.N.Y. 2011)...................................................................................... 9

*Bd. of Trs. of Ft. Lauderdale Gen. Emps. Ret. Sys. v. Mechel OAO*,

   811 F. Supp. 2d 853 (S.D.N.Y. 2011)..................................................................................... 14

*Burr v. Equity Bancshares, Inc.*, No. 19-CV-4346 (AJN), 2020 WL 6063558, at *6 (S.D.N.Y.

   Oct. 14, 2020) ........................................................................................................................ 20

*Campo v. Sears Holdings Corp.*,

   635 F. Supp. 2d 323 (S.D.N.Y. 2009) ................................................................................... 24

*Chapman v. Mueller Water Prods.*, Inc.,

    466 F. Supp. 3d 382 (S.D.N.Y. 2020) ................................................................ 14, 16

*In re CitiGroup Inc. Bond Litig.*,

    723 F. Supp. 2d 568 (S.D.N.Y. 2010) ..................................................................... 17

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,

    957 F. Supp. 2d 277 (S.D.N.Y. 2013) (Engelmayer, J.) ........................................... 13

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,

    856 F.3d 605 (9th Cir. 2017) .................................................................................. 16

*City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.*,

    679 F.3d 64 (2d Cir. 2012) ..................................................................................... 14

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat., PLC*,

    423 F. Supp. 2d 348 (S.D.N.Y. 2006) ................................................................ 18, 21

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,

    477 F. Supp. 3d 123 (S.D.N.Y. 2020) ..................................................................... 22

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,

    129 F. Supp. 3d 48 (S.D.N.Y. 2015) ....................................................................... 16

*Cornwell v. Credit Suisse Grp.*,

    689 F. Supp. 2d 629 (S.D.N.Y. 2010) ..................................................................... 24

*Doe v. Green*,

    593 F. Supp. 2d 523 (W.D.N.Y. 2009) ...................................................................... 6

*Emps.' Ret. Sys. of Gov't of V.I. v. Blanford*,

    794 F.3d 297 (2d Cir. 2015). ................................................................................... 22

*In re Estee Lauder Co., Inc. Sec. Litig.*, No. 23-CV-10669 (AS),

    2025 WL 965686 (S.D.N.Y. Mar. 31, 2025) ............................................................... 21

*Fait v. Regions Fin. Corp.*,

    655 F.3d 105 (2d Cir. 2011) .................................................................................................11

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,

    336 F. Supp. 3d 196 (S.D.N.Y. 2018) ...................................................................... 23

*Freudenberg v. ETrade Fin. Corp.*,

    712 F. Supp. 2d 171 (S.D.N.Y. 2010) ........................................................... 8, 10, 21

*Ganino v. Citizens Utils. Co.*,

    228 F.3d 154 (2d Cir. 2000) ................................................................................... 25

*In re Gen. Elec. Co. Sec. Litig.*,

    857 F. Supp. 2d 367 (S.D.N.Y. 2012) ................................................................... 22

*Gimpel v. The Hain Celestial Grp., Inc.*,

    156 F.4th 121 (2d Cir. 2025) ................................................................................. 25

*Harris v. AmTrust Fin. Servs., Inc.*,

    135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016) ........................... 15

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,

    422 F. Supp. 3d 821 (S.D.N.Y. 2019) ................................................................... 20

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells  Fargo Sec., LLC*,

    797 F.3d 160 (2d Cir. 2015) .................................................................................... 7

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*

    797 F.3d 160 (2d Cir. 2015). ................................................................................. 25

*In re Manhattan Inv. Fund Ltd.,*

    397 B.R. 1, 12 n.16 (S.D.N.Y. 2007) ...................................................................................... 23

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty. Ret. Ass'n v.*

    *MDC Partners, Inc.*,

    No. 15 CIV. 6034 (RJS), 2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016) ....................................11

*NECA-IBEW Pension Tr. Fund v. Bank of Am. Corp.*,

    No. 10 CIV. 440 LAK HBP, 2012 WL 3191860 (S.D.N.Y. Feb. 9, 2012) ..................................11

*Novak v. Kasaks*,

    216 F.3d 300 (2d Cir. 2000) ....................................................................................... 20, 23

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,

    367 F. Supp. 3d 16 (S.D.N.Y. 2019) .......................................................................... 19

*Omnicare, Inc. v. Laborers Dist Council Constr. Indus. Pension Fund*,

    575 U.S. 175, 185–86 (2015)................................................................................11, 13

*Oscar Prods., Inc. v. Zacharius*,

    893 F. Supp. 250 (S.D.N.Y. 1995) ............................................................................ 17

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*,

    694 F. Supp. 2d 287 (S.D.N.Y. 2010) (same); ........................................................... 15

*Police & Fire Ret. Sys. City of Detroit v. Argo Grp. Int'l Holdings, Ltd.*,

    No. 22-CV-8971 (LAK), 2024 WL 5089970 (S.D.N.Y. Dec. 12, 2024). .......................... 10, 19

*In re Refco, Inc. Sec. Litig.*,

    503 F.Supp.2d 611 (S.D.N.Y. 2007) .......................................................................... 17

*Sec. & Exch. Comm'n v. Medallion Fin. Corp., No. 21-CV-11125 (LAK),*

    2024 WL 4227753 (S.D.N.Y. Sept. 18, 2024) ........................................................... 13

*Set Cap. LLC v. Credit Suisse Grp. AG,*

    996 F.3d 64 (2d Cir. 2021) ............................................................................................ 21

*In Re Shanda Games Ltd. Sec. Litig.,*

    128 F.4th 26 (2d Cir. 2025) ..................................................................................... 12, 18

*In re Signet Jewelers Ltd. Secs. Litig.,*

    No. 16 CIV. 6728 (CM), 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018)...................... 13, 14, 24

*In re SLM Corp. Sec. Litig.,*

    740 F. Supp. 2d 542 (S.D.N.Y. 2010) ............................................................................ 17

*Staehr v. Hartford Fin. Servs. Grp., Inc.,*

    547 F.3d 406, 425 (2d Cir. 2008) .................................................................................... 7

*Steamfitters Loc. 449 Pension Plan v. Skechers U.S.A., Inc.,*

    412 F. Supp. 3d 353 (S.D.N.Y. 2019) ............................................................................ 20

*Tongue v. Sanofi,*

    816 F.3d 199 (2d Cir. 2016) .......................................................................................... 12

*In re Tronox, Inc. Sec. Litig.,*

    No. 09 CIV. 6220 (SAS), 2010 WL 2835545 (S.D.N.Y. June 28, 2010) ................................ 22

*Turner v. MagicJack VocalTec, Ltd.,*

    No. 13 CIV. 0448, 2014 WL 406917 (S.D.N.Y. Feb. 3, 2014) ................................................ 17

*In re Turquoise Hill Res. Ltd. Sec. Litig.,*

    No. 13 CIV. 8846 LGS, 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) .................................... 11

*U.S. Sec. & Exch. Comm'n v. Martino,*

    2025 WL 2782348 (S.D.N.Y. Sept. 30, 2025) .................................................................. 17

*Villare v. Abiomed, Inc.*,

No. 19 CIV. 7319 (ER), 2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021) ................................... 20

*In re Virtu Fin., Inc. Sec. Litig.*,

770 F. Supp. 3d 482 (E.D.N.Y. 2025) .................................................................................... 22

*In re Wachovia Equity Sec. Litig.*,

753 F. Supp. 2d 326 (S.D.N.Y 2011) .............................................................................. 16, 24

*In re Wells Fargo Sec. Litig.*,

12 F.3d 922 (9th Cir. 1993) .................................................................................................. 10

*Wilson v. New York City Police Dep't*,

No. 09 CIV. 2632 PAC HBP, 2011 WL 1215031 (S.D.N.Y. Feb. 4, 2011) .............................. 12

*Woolgar v. Kingstone Companies Inc.*,

477 F. Supp. 3d 193 (S.D.N.Y. 2020) ................................................................................... 10

*zCap Equity Fund LLC v. LuxUrban Hotels Inc.*,

792 F. Supp. 3d 407 (S.D.N.Y. 2025), *reconsideration denied*, No. 24 CIV. 1030 (PAE), 2025

WL 2962772 (S.D.N.Y. Oct. 21, 2025) (Engelmayer, J.) ................................................ passim

**Other Authorities**

ASC 326-20-30-7 .......................................................................................................................... 16

ASC 326-20-35-4 .......................................................................................................................... 16

**Rules**

17 C.F.R. § 210.4-01(a)(1) ............................................................................................................ 16

Fed. R. Civ. P. 9(b) ........................................................................................................................ 8

## I.    PRELIMINARY STATEMENT.

As Defendants acknowledge in their Motion to Dismiss Plaintiff's Consolidated Amended Complaint, this "is not a complicated case." Br. at 1. During the Class Period, from August 8, 2024 to March 2, 2025, Defendants had direct knowledge that the project underlying Ready Capital's single largest loan, the initially $460 million Construction Loan on the Portland Project, was "catastrophic" from the beginning. In May 2023, just 14 months after acquiring it, Ready Capital had to materially alter the terms of the Construction Loan as the project would not be completed by the loan's maturity date and no longer had sufficient funds to complete the construction. This amendment to the Construction Loan not only extended the loan's maturity date by 18 months, but also required Ready Capital to infuse an additional $48 million to cover the cost overruns and the interest payments due to the Lender, which is a Ready Capital subsidiary and/or affiliate, and to the Mezzanine Lender. As a result of this and a subsequent amendment, Ready Capital was able to ensure the Construction Loan interest payments were made or accrued so that it could bypass its more in-depth review of the Construction Loan as part of its CECL loan loss reserves for non-performing loans. This in-depth review would have required impairment of the Construction Loan which, considering the materiality of the Construction Loan to Ready Capital's overall loan portfolio, would have needed to be publicly disclosed. It would also have negatively impacted Ready Capital's distributable earnings and dividend, critical metrics for a REIT.

The amendment of the Construction Loan terms only avoided impairment by maintaining interest payments and assuming that the principal could be refinanced. Defendants, however, knew refinancing was impossible given the Portland Project's high loan-to-value ratio, nonexistent condominium sales (only ~10 of 132 units sold), and local civil unrest. Yet, as late as November 7-8, 2024, Defendants continued to falsely assure investors that 77% of the Mosaic construction

1

loans would be repaid by year-end and that Ready Capital's $0.25 dividend was safe, with Defendant Zausmer denying knowledge of any "onetime items" impacting earnings. In reality, Ready Capital had already strategically defaulted on the Mezzanine Loan's interest payments in September 2024 to preserve capital and commissioned foreclosure appraisals. Thus, Defendants knew that if they properly applied accounting standards in accordance with GAAP that it would necessitate a massive loss reserve.

The scheme unraveled on March 3, 2025, when Ready Capital could no longer conceal the default of this "idiosyncratic" massive loan after it was not paid off at maturity on December 31, 2024 that caused a $130 million loss reserve and 50% reduction in Ready Capital's dividend. Defendants' disclosures drove Ready Capital's stock price to plunge $1.86 per share, or 26.84%, as the truth about the "catastrophic" Construction Loan was finally revealed to investors.

In response, Defendants do not dispute the vast majority of the factual allegations in the Amended Complaint or the narrative of events. Instead, they rely on characterization of the alleged misrepresentations as "opinions" or "puffery" or claim the protection of the PSLRA safe harbor for forward-looking statements. These technical legal arguments are to no avail against the well-pleaded allegations of factual misrepresentations and omissions about Ready Capital's loan portfolio in general and the Construction Loan in particular. Defendants also attempt to manufacture a credibility crisis out of a single typographical error in the Complaint, where Plaintiff mistakenly placed deed-in-lieu in 2024 rather than 2025. Plaintiff acknowledges that the deed-in-lieu offer occurred in February 2025, not 2024. However, this scrivener's error is immaterial because the correct date is facially apparent from the surrounding allegations (¶¶167, 169-71, 182-184, 217, 255-56) and Defendants cannot dispute the substantive scienter allegation that renders the error irrelevant: specifically, that as early as September 2024, Ready Capital strategically

2

defaulted on the Mezzanine Loan interest payments to preserve capital. ¶¶169-71. This undisputed fact establishes that Defendants knew the project was failing to support its capital stack months before the Class Period ended. This objective fact—a deliberate default to hoard capital—negates Defendants' claims that the alleged misstatements are inactionable opinions or protected statements.

Defendants' challenge to Plaintiff's scienter allegations fare no better. Not only did Defendants have a motive to delay recognition of the impairment of the Construction Loan, to preserve Ready Capital's dividend, but the Complaint alleges facts creating a strong inference that Defendants knew of the Construction Loan's impaired status throughout the Class Period through the amendment of its terms and the need for an infusion of additional capital followed by the strategic default in September 2024. As the Complaint adequately pleads a claim under Section 10(b) and 20(a) of Securities Exchange Act as required under the PSLRA, Defendants' motion to be denied.

## II.    FACTUAL BACKGROUND.

### A.  The Massive Construction Loan.

Defendant Ready Capital is a REIT that primarily originates and services lower-to-middle-market commercial real estate loans averaging $4.3 million in outstanding principal. ¶¶22, 97. Yet, following its 2022 merger with Mosaic, it held a massive outlier: a $460 million Construction Loan for "Block 216," a mixed-use development in Portland, Oregon (the "Portland Project"). ¶¶5, 50-51, 60, 230. Although this single loan represented nearly 5% of the total portfolio, Defendants concealed its unique significance—and its severe distress—until the end of the Class Period. ¶¶5, 97, 99, 264.

### B.  Loan Amendments Concealed "Catastrophic" Issues.

In a court filing, Ready Capital admitted that the Portland Project had "catastrophic

setbacks from the beginning" including cost overruns and a liquidity crisis affecting its Sponsor, Walter C. Bowen. ¶¶58, 60, 73-77. By March 2023, the Portland Project had insufficient funds to complete the construction and had failed to meet the sales milestones required to extend the loan maturity. ¶¶77, 79. Absent a loan modification, the loan's then June 29, 2023 maturity date would pass before the project was completed. ¶79.

With the loan-to-value ("LTV") ratio already dangerously high at ~80% (¶¶67-68, 78, 108, 199, 216), Zausmer, on behalf of Ready Capital, executed the "Fifth Amendment" in May 2023 to avoid a formal default. ¶¶78-79. This amendment injected roughly $48 million of "preferred equity" to cover interest payments, including for the Mezzanine Loan, allowing the loan to remain nominally "performing." ¶¶78, 83-87, 96, 267. A subsequent December 2023 modification further masked the distress by allowing "Paid-In-Kind" ("PIK") interest, enabling Ready Capital to book revenue without collecting actual cash. ¶¶34-35, 56, 84-87, 208-09. Despite the significance of the Fifth Amendment, investors were informed of only a minor "financial difficulty" on *an unidentified loan* that resulted in a *de minimis* $111,000 credit loss. ¶¶114, 273.

Defendants Ahlborn and Zausmer monitored this restructuring closely. ¶80. CW1, a former Vice President at Waterfall Asset Management (the manager of Ready Capital), who reported directly to Defendant Ahlborn and was heavily involved with accounting and SEC reporting for the Mosaic Portfolio, including the Construction Loan, and the related CECL reserves, confirmed that the Portland Project's failures—including construction delays and the lack of condo sales— were "known and documented" internally. ¶¶81-87. CW1 further confirmed that Ahlborn and Zausmer attended quarterly meetings where the Construction Loan's reserves were reviewed and approved. ¶85. By relying on the artificial "performing" status, Defendants bypassed comprehensive loan reviews and instead relied on automated third-party data to approve minimal

4

loss reserves, despite knowingly disregarding the financial difficulties and that foreclosure was probable. ¶¶36-49, 55-69, 73-75, 77-88, 90, 93-96, 100, 166-73, 177, 198-199, 215-217, 259- 279.

**C.  August 2024 – November 2024: The Strategic Default and Defendants' Misstatements.**

By August 2024, any potential non-fraudulent basis for Defendants' statements concerning the Mosaic and M&A portfolios had eroded. On August 7, 2024, Defendant Capasse claimed Ready Capital's Q2 results reflected "improving credit metrics across the loan portfolio" and "improving credit performance" in the M&A portfolio. ¶¶187, 192.

Beginning in September 2024 and continuing through December 2024, Ready Capital had intentionally failed to pay the interest due on the Mezzanine Loan. Ready Capital was preserving this capital, knowing that it would pursue a deed-in-lieu arrangement with the Borrower to keep the capital for Ready Capital. ¶¶56, 96, 166-171. This strategic default was an admission by Ready Capital that the Portland Project could not support its capital stack and Ready Capital was prioritizing its own recovery over the project's obligations to the Mezzanine Lender. *See* ¶¶167-171. Notwithstanding, Defendants concealed this default and the probable foreclosure of the Construction Loan from investors while Defendants chose not to increase their loss reserves for the Construction Loan and continued to accrue PIK interest on it which resultingly inflated Ready Capital's reported earnings, net book value, and distributable earnings disclosed to investors in its financial statements and Defendants' other public statements. *See, e.g.*, ¶¶185-199, 208-17.

Defendants' fraud peaked during the November 8, 2024 Earnings Call when Defendant Ahlborn stated that "74%" of the Mosaic construction loans were "expected to be repaid at the end of the year." ¶207. With Defendant Zausmer stating that the current dividend "$0.25 level is a good baseline" and that "[t]here are no onetime items that I'm aware of" that would impact the distributable earnings' ability to cover the dividend. ¶210. These statements were lies. At that very time, Ready Capital was already commissioning two separate appraisals on the Portland Project to

support a foreclosure or deed-in-lieu transaction. ¶¶167-73, 175, 179. Furthermore, given their positions and knowledge of the industry, Defendants knew refinancing the Construction Loan with a bridge loan was impossible given the known "other factors" affecting the Portland Project (¶¶55, 167-73, 233, 274-75), including the absence of condo sales (¶¶7, 86, 90, 93-94, 181, 199, 216, 271, 274-276), lackluster office leasing (¶¶94, 176-178, 230, 270, 272), the hotel's low revenue per available room (¶¶98, 101), the collapse of the Portland market environment (*see, e.g.*, ¶¶6, 73-79, 82-94, 177), the already existing high loan-to-value ratio (even disregarding the November 2024 commissioned appraisals) (¶¶67-68, 78, 108, 199, 216, 233), and the low quality of the Sponsor and its lack of liquidity (¶¶55, 86, 100, 199, 216, 271, 275).

When Ready Capital received the final appraisals in January 2025, it confirmed what was already apparent to them, that the value of the Portland Project was materially below the amount owed on the Construction Loan. The "As-Is" market value as of November 2024 was just *$257.2 million*[1] with the Ritz-Carlton hotel and residences valued at $223 million (¶180) and the retail and office space valued at $34,200,000 - which was only $6.7 million more than the previous appraised value. ¶¶175-76, 180. This value was *50%* less than the $516 million outstanding loan balance without taking into account Ready Capital's now $62 million equity investment. ¶¶78, 182-83, 230. As Ready Capital's own attorneys represented in open court, the Portland Project was "completely underwater" and that "[t]here is no money to repay anyone." ¶184. Consequently, on February 7, 2025, Defendants sought a deed-in-lieu of foreclosure. ¶¶168, 171.

---

[1] Defendants incorrectly argue the $257.2 million figure excludes the residential portion of the Portland Project. Br. at 8 n.4 The Amended Complaint alleges that the "second appraisal was conducted by HVS on the Ritz-Carlton hotel *and residences*[.]" ¶179 (emphasis added). On a motion to dismiss, the Court must accept this allegation as true, especially where Defendants offer no evidence to contradict it. *See Doe v. Green*, 593 F. Supp. 2d 523, 527 (W.D.N.Y. 2009) (accepting plaintiffs' allegations as true even when "facts . . . are sharply disputed by the two sides.").

### D. March 3, 2025 – The Fraud is Revealed.

Defendants' scheme finally unraveled on March 3, 2025 when Ready Capital announced its Q4 and full-year 2024 results, revealing a staggering $130 million loss reserve on the Construction Loan. ¶¶226-27, 230. This write-down decimated earnings, as Capasse explained that the Construction Loan's shift to non-accrual status caused an "immediate impact to earnings" with a "quarterly reduction of $0.11 per share or 350 basis points on ROE" that forced Ready Capital to slash the quarterly dividend by 50%, from $0.25 to $0.125 per share. ¶¶220, 226-27.

With the Borrower unable to pay or refinance the Construction Loan, Defendants were now forced to directly discuss it with investors as opposed to obscuring it as part of the Mosaic Portfolio which it had done up to then. *E.g.*, ¶¶222, 226. Notably, Capasse admitted that the Portland Project was an "idiosyncratic position in our otherwise granular lower middle market CRE loan portfolio[.]" ¶228, 230. The $130 million loss reserve materially caused a 14% reduction of Ready Capital's book value to $10.61 per share. ¶224. The market reaction to this news was immediate and devastating with Ready Capital's stock plunging $1.86 per share, or 26.84%, that day. ¶240.

## III.    LEGAL STANDARD.

On Rule 12(b)(6) motions to dismiss, courts "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in Plaintiffs' favor."[2] *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 169 (2d Cir. 2015). Dismissal is only appropriate where Plaintiffs "can prove no set of facts consistent with the complaint that would entitle them to relief." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 150 (2d Cir. 2021).

---

[2] Defendants purport to request the Court take judicial notice of the documents it filed with its motion. While the Court may take judicial notice of the existence of the documents, it should not accept them for the truth of their contents. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

## IV.    ARGUMENT

### A.    Plaintiff Adequately and Plausibly Alleges Material Misstatements and Omissions.

#### 1.    *Defendants' Misstatements were Contemptuously False and Misleading.*

Under Rule 9(b), "[a] statement is misleading if a reasonable investor would have received a false impression from the statement." *Freudenberg v. ETrade Fin. Corp.*, 712 F. Supp. 2d 171, 180 (S.D.N.Y. 2010). Defendants incorrectly label Plaintiff's allegations as "fraud by hindsight," and argue that the alleged misstatements are mere disagreements with accounting judgments. Defendants ignore specific, contemporaneous facts rendering their statements false when made: (1) Zausmer signed the Fifth Amendment and Ready Capital injected $48 million into the Portland Project to cover cost overruns, extend the Construction Loan's maturity date, and amended the Construction Loan Agreement to ensure the loan stayed as "performing" (¶¶77-79, 83-87, 96, 267); (2) the default of the Mezzanine Loan caused by Ready Capital's deliberate decision not to pay the Mezzanine Lender its interest payments starting in September 2024 to preserve the capital for itself (¶¶96, 166-71); (3) the default by the Borrower's/Sponsor's financial covenants (as evidenced by required certifications to the Lender) and inability for the loan to be refinanced prior to maturity in part due to its high loan-to-value ratio (¶¶55, 77-78, 86, 100, 108, 199, 216, 271, 275); (4) Defendants' treatment of the Construction Loan as "performing" in determining loss reserves while not incorporating the specific information that was known and documented into the loss reserves in accordance with ASC 326 and GAAP (*e.g.*, ¶¶36-49, 83-87, 198-99, 215-217); (5) Defendants' commissioning appraisals for the Portland Project in November 2024 following the "event of default", including the financial covenants, as they prepared to foreclosure on the Portland Project after the maturity date of the Construction Loan (¶¶167-74, 179); (6) the virtually non-existent condominium sales that were provided monthly to Defendant Ahlborn (*see e.g.,* ¶¶86, 93); (7) lackluster office leasing (¶¶94, 176-178, 230, 270, 272); (8) the previous appraisal on the Portland

Project (*see* ¶176); and (9) the effect of the issues plaguing downtown Portland on the value of the Portland Project which Ready Capital's Managing Director and Head of Construction Lending and stated rendered the Portland Project "catastrophic" from the beginning (*see, e.g.,* ¶¶58, 60, 73,-79, 82-94, 90, 176-77). Given this knowledge, Defendants' statements, including those of Ready Capital's financial position were knowingly false, omitted material information which made the statements misleading to a reasonable investor, and contained false embedded facts. *See, e.g.,* ¶¶198-99, 215-217. These are not "conclusory" statements but detailed and particularized allegations of falsity.

Here, "the incantation of fraud-by-hindsight will not defeat an allegation of misrepresentations and omissions that were misleading and false at the time they were made." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 504 (S.D.N.Y. 2011). At the beginning of the Class Period, Ready Capital had already allocated their entire CER buffer for losses on the Mosaic Portfolio's other loans (¶164) with none remaining for the Construction Loan and following June 30, 2023 (¶¶114, 116, 143, 164, 199, 216) took no, or minimal reserves on the loan (¶84, 114, 116, 273). This did not comport with the gravity of the facts regarding the Construction Loan known by Defendants. Despite this, Ready Capital continued to treat the Construction Loan as "performing" and took minimal reserves without taking into account Defendants' knowledge of the Construction Loan's non-performance and market's issues. ¶¶84-86. This, in turn, meant that the Construction Loan's reserves were calculated in a materially misleading way not consistent with ASC 326 and GAAP. Notably, the appraisals Defendants received in January 2025 were not based on some "new information" that Defendants' acquired as they contend (Br. at 16-17), but the valuations were primarily based on information they already had in their possession during the Class Period (*see e.g.*, ¶¶86, 90, 176-177, 181, 254,

9

270. 274-77). Even more egregious, Defendants did not take any reserves on the Construction Loan after Ready Capital purposefully caused a default of the Mezzanine Loan in September 2024 by failing to make interest payments on the loan as a way to preserve almost $2 million in capital for Ready Capital as it prepared to foreclose on the Construction Loan. ¶¶170-71, 204, 213, 217.

Simply put, this is not as Defendants argue (Br. at 16) a case where they misjudged their reserves in hindsight. *See AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec*., LLC, No. 01 CIV. 11448 (JGK), 2005 WL 2385854, at *12 (S.D.N.Y. Sept. 26, 2005) (not hindsight when the asset value "was computed in a materially misleading way that was in fact wrong at the time it was issued"); *Freudenberg*, 712 F. Supp. 2d at 191 ("It is not 'fraud by hindsight' when statements related to a loan's existing quality and risks were false and misleading when made."); *see also In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 926–27 (9th Cir. 1993) (finding falsity sufficiently alleged as failure to disclose "problem loans" and understating loss reserves from an alleged "deliberate failure to disclose the status of certain specific loans… is neither a case second-guessing decisions by management nor one alleging 'fraud by hindsight'").

Defendants' reliance on *Police & Fire Retirement System City of Detroit v. Argo Group. International Holdings, Ltd.*, No. 22-CV-8971 (LAK), 2024 WL 5089970, *6-7 (S.D.N.Y. Dec. 12, 2024). is misplaced. In that case, plaintiffs cited a later-formed task force to infer earlier knowledge and also relied on CWs that failed to discuss issues that affected the reserves. The Amended Complaint, however, sets forth contemporaneous facts showing Defendants' knowledge that the Construction Loan was non-performing and should be impaired. Defendants' other authorities are similarly inapplicable as plaintiffs in those cases offered only generalized opinions or relied on the magnitude of the eventual write-down without allegations of contemporaneous facts. *See Woolgar v. Kingstone Companies Inc.,* 477 F. Supp. 3d 193, 226-27 (S.D.N.Y. 2020)

10

(finding plaintiffs failed to plausibly allege that any individual defendant had specific contemporaneous contradictory information that provided Defendants with awareness of the impending reserve requirements before the charges were realized); *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty. Ret. Ass'n v. MDC Partners, Inc.*, No. 15 CIV. 6034 (RJS), 2016 WL 5794774, at *11 (S.D.N.Y. Sept. 30, 2016) (finding plaintiffs did not allege anything more than a "generalized opinion" that a goodwill impairment was necessary due to increasing net losses and goodwill). Here, Plaintiff alleges documented, contemporaneous evidence of knowledge—notably the Mezzanine Loan default, the Sponsor's violation of financial covenants, and non-existent condominium sales —that existed before the loss reserves were recorded.[3]

### 2. *Defendants' Credit Losses and Financial Misstatements are Actionable.*

Defendants attempt to shield their false statements regarding loan loss reserves and valuations by labeling them as "opinions" protected by *Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011). Br. at 9-17. An opinion is actionable if the: (1) "the speaker did not hold the belief she professed"; (2) the opinion contains false "embedded statements of fact"; or (3) the opinion omits facts "whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Omnicare, Inc. v. Laborers Dist Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185–86, 194 (2015). Furthermore, "opinions, though sincerely held and otherwise true as a matter of fact, may nonetheless be actionable if the speaker

---

[3] Similarly, Defendants' other authorities are of no consequence. *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13 CIV. 8846 LGS, 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014) (finding scienter insufficient where CWs had "no contact" with any company employee, but noting that the "magnitude" of financial errors can support scienter when other "circumstantial evidence" is present); *NECA-IBEW Pension Tr. Fund v. Bank of Am. Corp.*, No. 10 CIV. 440 LAK HBP, 2012 WL 3191860, at *2, 10 (S.D.N.Y. Feb. 9, 2012)(dismissing claims where plaintiffs merely alleged that defendants "should have been aware" that loss reserves were inadequate based on the risks in the wake of the housing bubble).

omits information whose omission makes the statement misleading to a reasonable investor." *zCap Equity Fund LLC v. LuxUrban Hotels Inc.*, 792 F. Supp. 3d 407, 431–32 (S.D.N.Y. 2025), *reconsideration denied*, No. 24 CIV. 1030 (PAE), 2025 WL 2962772 (S.D.N.Y. Oct. 21, 2025) (Engelmayer, J.) (quoting *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016)). Therefore, "[b]ecause a reasonable investor expects that opinion statements rest on some meaningful inquiry fairly align with the information in the issuer's possession at the time, and do not reflect baseless, off-the-cuff judgments, it is generally misleading when statements do not rest on meaningful inquiry, do not align with the information in the issuer's possession, or are baseless, off-the cuff judgments." *In Re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 43–44 (2d Cir. 2025) (internal quotation marks omitted).

Defendants attempt to reframe the Amended Complaint as only alleging that Defendants "did not genuinely believe the Portland Project loan was properly valued or reserved" under the first prong of *Omnicare*. Br. at 10 (citing a sole paragraph, ¶277). This is not so and Defendants fail to grapple with the second and third prongs except in a footnote (Br. at 10 n.6). Courts routinely do not consider arguments made solely in footnotes. *Wilson v. New York City Police Dep't*, No. 09 CIV. 2632 PAC HBP, 2011 WL 1215031, at *12 (S.D.N.Y. Feb. 4, 2011) (not considering argument in footnote).

In any event, the Amended Complaint is replete with critical facts that Defendants knew or were in possession of objective information of the Construction Loan's non-performance and impairment that did not align with Defendants' opinions that made their statements misleading to a reasonable person and further contained false embedded statements of facts. Here, the Amended Complaint alleges that the omission of these material qualitative and quantitative facts made the alleged misstatements materially misleading. ¶¶198-99, 215-217. Thus, despite these material

12

matters known by Defendants, they concealed these facts, maintained the Construction Loan as "performing," and maintained minimal reserves on the Construction Loan purportedly relying on a third-party's evaluation as opposed to the information in their possession. *See* ¶¶ 83-85. Ready Capital's disclosures prior to the loss reserves gave no indication that the Construction Loan or Mosaic Portfolio was at risk of such significant impairment, creating a reasonable inference that material negative information was either ignored or deliberately excluded from the valuation process. *See City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 305-08 (S.D.N.Y. 2013) (Engelmayer, J.) (finding that forward-looking opinion statements actionable because allegations of omissions of present facts were concealed and statements were not realistic); *see also Omnicare,* 575 U.S. at 194 (finding plaintiff can show this by "identify[ing] particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have[.]").

   *In re Signet Jewelers Ltd. Securities Litigation* is directly analogous. No. 16 CIV. 6728 (CM), 2018 WL 6167889, at *13 (S.D.N.Y. Nov. 26, 2018). First, regarding quantitative reserves, the court found opinions actionable where the plaintiff plausibly alleged "Defendants knew that its reserves did not account for losses that it was likely to incur and that its reserve figures provided a misleading picture." 2018 WL 6167889, at *13 (S.D.N.Y. Nov. 26, 2018). Just as *Signet* defendants possessed internal data on their loan book's poor quality, Defendants here knew or had access negative facts regarding the Construction Loan. By omitting this specific, contradictory information, Defendants opinions on loss reserves were materially misleading. *See id.*, *see also Sec. & Exch. Comm'n v. Medallion Fin. Corp.,* No. 21-CV-11125 (LAK), 2024 WL 4227753, at *9 (S.D.N.Y. Sept. 18, 2024) (finding opinion valuation misstatements actionable as defendants "misled investors by withholding information material to [company's] fair value" and other

13

opinion statements misleading for failing to calculate values in line with an ASC provision).

Second, *Signet* held that qualitative opinion statements were actionable because executives "misrepresented their beliefs" by "disregard[ing] internal warnings" that "a substantial and growing portion of its credit portfolio contained subprime loans" 2018 WL 6167889, at *13. Here, Defendants were aware of the severe issues facing the Construction Loan, a fact confirmed by CW1, who acknowledged that the Construction Loan's non-performance was documented internally. ¶¶82-83, 86. Regardless, Defendants continued to treat the loan as "performing," accepting Trepp's minimal reserves rather than conducting the loan-by-loan analysis they claimed to perform in accordance with accounting standards. *Compare* ¶¶37, 47 *with* ¶84.

Defendants argue that even accepting Plaintiff's allegations as true this does not bear on whether the loan was properly valued or reserved, or Defendants' scienter. Br. at 11. Not so. Plaintiff alleged that Defendants treated the Construction Loan as "performing" and accepted Trepp's determinations without conducting the CECL reserves for "non-performing" loans. ¶¶84-87. Thus, Defendants' cases are factually distinguishable from the case here. *See Chapman v. Mueller Water Prods.*, Inc., 466 F. Supp. 3d 382, 400 (S.D.N.Y. 2020) (finding that CW reports that "certain smart meters" were returned for "repair or replacement" due to "different defects" at "different times" did not bear on whether defendants accounted them in loss reserves); *City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 69 (2d Cir. 2012) (declining to find publicly-known information necessitated an interim impairment and finding complaint was "devoid even of conclusory allegations that defendants did not believe in their statements").[4]

---

[4] Defendants' arguments that "management judgment" eliminates falsity (Br. at 11 n.7) are likewise misplaced because Plaintiff alleges specific objective facts ignored by Defendants that establish violations of GAAP. In contrast to here, the plaintiffs in Defendants' authorities fail to allege specific fraudulent intent. *See Bd. of Trs. of Ft. Lauderdale Gen. Emps. Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 881 (S.D.N.Y. 2011) (finding absence of allegations of "corresponding

14

Defendants further argue that Plaintiff cannot establish falsity because he failed to allege the assumption or inputs used by Ready Capital to value the Construction Loan and that such values required increased loss reserves. Br. at 12-13. First, the circumstances that required the massive $130 million impairment, representing nearly 30% of the total loan, in March 2025 were present and known to the Defendants throughout the Class Period. The failure to record the impairment earlier shows Ready Capital was not using valid assumptions or inputs to value the Construction Loan. *See, e.g.*, ¶¶83-84, 86, 198-99, 215-17; *see also* ¶¶36-49. The Amended Complaint alleges that Ready Capital did not increase its reserves for the Construction Loan both before (excepting $111,000 as a result of the Fifth Amendment) and during the Class Period even as the Mezzanine Loan went into default in September 2024, Defendants were aware that as of November 2024 that they sold only 10 condos, and with less than 2 months from maturity had ordered appraisals following a default of the loan's financial covenants and being aware that the loan would not qualify to be refinanced through a bridge loan. ¶¶6-7, 55, 73-79, 82-94, 98, 100, 177-78, 181, 199, 215-217, 230, 233, 271, 274-276.

Second, CW1 stated that Defendants relied upon a third-party provider, Trepp, to determine loss reserves for "performing" loans and that management accepted Trepp's outputs at face value and set minimal reserves for the Construction Loan. ¶84. Furthermore, "the scale of the" $130 million loss reserves to the Construction Loan's original $460 million principal amount "supports that defendants 'did not base the company's statements ... on a meaningful inquiry' or that these 'statements did not fairly align with the information in the issuer's possession at the time.'"

---

fraudulent intent" to support alleged GAAP violations); *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 302 (S.D.N.Y. 2010) (same); *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 171 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016) (finding that allegations did not support that the corporation "exercised its judgment in a way that violated GAAP").

15

*LuxUrban*, 792 F. Supp. 3d at 439. Defendants' authorities are factually distinguishable because Plaintiff specifically alleges that Defendants possessed or received contradictory information showing losses would exceed the Construction Loan's "minimal reserves" (¶¶84, 114, 116, 164, 273) yet disregarded incorporating this information into their disclosed and undisclosed loan reserve procedures.[5]

Defendants' failure to calculate loss reserves per GAAP also demonstrates falsity. *See* 17 C.F.R. § 210.4-01(a)(1) (financial statements not in accordance with GAAP are "presumed to be misleading[.]"). Ready Capital was required to measure expected credit losses "based on past events including historical experience, current conditions, and reasonable and supportable forecasts." ¶¶37, 40 (citing ASC 326-20-30-7). Moreover, under ASC 326-20-35-4, lenders "shall measure expected credit losses based on the fair value of the collateral" when "foreclosure is probable[.]" ¶42. Here, the facts known to Defendants, especially the September 2024 Mezzanine Loan default and the inability to refinance the Construction Loan, meant foreclosure was "probable" by no later than Defendants' misstatements on November 8, 2024. *See above*; ¶¶198-99, 215-17. Because Defendants' opinion statements contained false factual assertions that their

---

[5] *See Chapman.*, 466 F. Supp. 3d at 402 (S.D.N.Y. 2020) (noting Chapman had already reserved millions for warranty losses on water meters and finding no falsity where plaintiffs relied on an 83% figure that referred to unactivated meters rather than defects, and thus failed to show that defendants knowingly miscalculated reserves); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 362 (S.D.N.Y 2011) (CWs failing to discuss calculations of loss reserves and absence of allegations that Wachovia "losses exceeding their reserves" on a portfolio of loans)*; Glaser v. The9, Ltd.,* 772 F. Supp. 2d 573, 591 (S.D.N.Y. 2011) (CW allegations making bare allegations that the company "would have known" is not supportive of scienter); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 612-13 (9th Cir. 2017) (failing to allege falsity that additional facts existed necessitating an interim impairment when defendants represented that during annual impairment there "were no facts and circumstances" to support an impairment); *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 76 (S.D.N.Y. 2015) (finding that plaintiffs failed to adequately allege an omission because they did not identify specific facts regarding MetLife's inquiry or knowledge it had that would render its reserves misleading).

values complied with GAAP, they are actionable "embedded facts." *U.S. Sec. & Exch. Comm'n v. Martino*, 2025 WL 2782348, at *7 (S.D.N.Y. Sept. 30, 2025); *LuxUrban*, 792 F. Supp. 3d at 438 (finding "a difference in its application" of accounting method is a fact).

Courts routinely find falsity where, as here, "defendants' reserves were calculated based solely on assets that had already defaulted instead of also accounting for those assets reasonably likely to default in the future, as plaintiffs argue [the defendant] was required to do by the relevant accounting rules." *In re CitiGroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 592–93 (S.D.N.Y. 2010); *In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 555 (S.D.N.Y. 2010) (finding falsity where court "cannot conclude that [defendant] calculated loan loss reserves in accordance with GAAP *"*); *In re Refco, Inc. Sec. Litig.*, 503 F.Supp.2d 611, 656–57 (S.D.N.Y. 2007) ("At the motion to dismiss stage, the plaintiffs' assertion that certain [GAAP] practices were not generally accepted must be taken as true.").[6]

### 3. *Zausmer Made Materially False Statements.*

First, Defendants' sole challenge to Zausmer's "baseline" statement is a factual dispute regarding the speaker. Br. at 22. While Defendants attach a conflicting transcript, Plaintiff specifically alleges Zausmer made the statement. ¶210. This allegation is based on a transcript from S&P Global Market Intelligence.[7] On a motion to dismiss, Plaintiff's allegations control, and resolving this factual discrepancy against the Plaintiff is improper. *See Oscar Prods., Inc. v. Zacharius*, 893 F. Supp. 250, 258 (S.D.N.Y. 1995) (denying dismissal because it must accept as true plaintiff's allegation despite a factual dispute).

---

[6] Defendants' reliance on *Turner v. MagicJack VocalTec, Ltd.* is misplaced as the court found that plaintiffs failed to establish the basis for the GAAP violations and only then noted that the absence or restatement or auditor involvement further weighed against a finding of falsity. No. 13 CIV. 0448, 2014 WL 406917, at *9 (S.D.N.Y. Feb. 3, 2014).

[7] Declaration of Nicholas Porritt in Support of Plaintiff's Opposition to the Motion to Dismiss dated January 9, 2026 at Ex. 1(call transcript attributing statement to Zausmer).

Second, Zausmer's statements that "$0.25 is a good baseline" and that there were "no onetime items" were materially false. When Zausmer spoke on November 8, 2024, Defendants were already seeking appraisals following an "Event of Default," had ceased interest payments on the Mezzanine Loan, and faced the imminent maturity of the massive Construction Loan. ¶¶170-73. As Chief Credit Officer, Zausmer was intimately aware of these facts: he signed the Fifth Amendment (¶78) , according to CW1, attended the quarterly meetings where these reserves were approved (¶¶85-86), and repeatedly evidenced his in-depth knowledge of all items related to Mosaic Portfolio (¶¶64, 67, 70, 72, 80, 85, 142-43, 158, 209-10, 233, 270, 281-82).

Defendants argue that the "onetime items" is a statement of opinion. Br. at 17. It is, however, a statement of present fact of his current knowledge. ¶210. Even if viewed as an opinion, it is an actionable half-truth because Zausmer knew the "direness of the situation and failed to acknowledge that truth." *City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat., PLC*, 423 F. Supp. 2d 348, 361 (S.D.N.Y. 2006). Defendants' argument that Zausmer's statements were "off-the-cuff response[s]" (Br. at 22), actually supports falsity. *See In Re Shanda*, 128 F.4th at 43–44 (opinions that are "off-the cuff judgments" lacking meaningful inquiry are "misleading").

### 4. The "Improving Credit", "Clear Out", and "Onetime Item" Misstatements are Actionable.

During the Class Period, Defendants assured investors that Ready Capital's loan portfolio was exhibiting "improving credit metrics" and "improving credit performance." ¶¶8, 187, 192. These were not subjective opinions; they were statements of existing fact that concealed the catastrophic deterioration of Ready Capital's single largest asset. At the time Defendants claimed "improving credit metrics" (¶187) and "improving credit performance," the Construction Loan (roughly 4% of the total portfolio) was treated as "performing" despite knowledge of the Construction Loan's non-performance and the imminency of foreclosure. *See, e.g.*, ¶¶55-56, 74-

18

75, 77, 80, 83-86, 88, 198-199, 215-217, 272. Describing a portfolio containing a massive, technically defaulted, and insolvent loan as "improving credit metrics" and "credit performance" at the very same time it was about to undertake massive loss reserves on the Construction Loan as well as the "non-core assets" (*see* ¶¶231-239) creates a decidedly "false impression." *See Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 30 (S.D.N.Y. 2019) (omitting crucial qualifying information creates actionable half-truths); *ADL, LLC v. Tirakian*, No. CV 2006-5076, 2010 WL 3925131, at *15 (E.D.N.Y. Aug. 26, 2010), *report and recommendation adopted*, No. 06 CV 5076 SJF MDG, 2010 WL 3926135 (E.D.N.Y. Sept. 29, 2010) (finding claims of a stable business relationship were potentially misleading "half-truths" given defendant had issued default notices).

Plaintiff explicitly alleges that the statements were false because the "Construction Loan, its current condition, low occupancy, and unlikelihood of payment in full by its December 31, 2024 maturity date meant that the Construction Loan should have been assessed for expected credit loss and an impairment or reserve of at least $130 million recorded." ¶¶199, 216. Moreover, the Amended Complaint includes additional allegations in Paragraph 217 why the "no onetime items" and "clear out" statements were materially misleading. These are not the "generic" allegations rejected in Defendants' authorities. *See Argo*, 2024 WL 5089970, at *9-10 (finding plaintiff failed to identify specific words that were false and thus the alleged reasons for falsity were not specific enough to determine what statements were false).

Defendants' arguments that improving credit metric and credit performance statements are puffery also fail. Br. at 18. The at issue misstatements are not too "general" and whether a statement is made "off-the-cuff" is irrelevant to a puffery determination. Here, Defendants' statements that Ready Capital's loan performance "as of June 30, 2024" had "improving credit performance" and

19

"improving credit metrics", including references to the metrics that the statements were based upon, were statements of then current and measurable facts which were materially false and misleading for failing to disclose negative impact of the Construction Loan on the loan portfolios. Thus, Plaintiff's alleged misstatements are not puffery. *See Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) ("the complaint alleges that the defendants did more than just offer rosy predictions; the defendants stated that the inventory situation was 'in good shape' or 'under control' while they allegedly knew that the contrary was true").[8]

Finally, the statement that roughly 74-77% of the Mosaic Portfolio and PIK interest in the construction's loans would be "cleared out" (¶¶207-09) was materially false. By November 8, 2024, the Construction Loan was roughly seven weeks from foreclosure, Defendants were commissioning appraisals, and had already stopped paying the Mezzanine Loan's interest payments for over two months. ¶¶166-73. For the same reasons that Defendants' other "opinion" statements are actionable under *Omnicare*, so are these misstatements.

### 5. The Safe Harbor is Inapplicable to Defendants' Misstatements.

To be "meaningful," cautionary language "must convey substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statements." *LuxUrban*, 792 F. Supp. 3d at 432. "Language that is 'vague' or 'mere boilerplate' does not suffice." *Id*.

---

[8]Defendants' authorities are similarly distinguishable *See Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 845-46 (S.D.N.Y. 2019) (in fact finding certain statements argued to be puffery were actionable as they were based on a "number" that is "concrete and measurable"); *Villare v. Abiomed, Inc.*, No. 19 CIV. 7319 (ER), 2021 WL 4311749, at *15-16 (S.D.N.Y. Sept. 21, 2021) (finding non-descript statements of improving or growth too general to be verifiable); *Burr v. Equity Bancshares, Inc.*, No. 19-CV-4346 (AJN), 2020 WL 6063558, at *6 (S.D.N.Y. Oct. 14, 2020) (generalized statements); *Steamfitters Loc. 449 Pension Plan v. Skechers U.S.A., Inc.*, 412 F. Supp. 3d 353, 363 (S.D.N.Y. 2019) (statements not of "concrete fact or outcome").

20

Defendants argue that their loan reserves, "one time," and "clear out" statements are protected because they disclosed that loss estimates involved "judgment" under GAAP. Br. at 19; ECF No. 43-11 at 38. This boilerplate fails because "cautionary words about future risk cannot insulate from liability [a defendant's] failure to disclose the risk that has, in fact, materialized in the past and is virtually certain to materialize again." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 85 (2d Cir. 2021); *see Abbey* 423 F. Supp. 2d at 360 (finding statements not forward looking when "then-existing financial condition and made at a time when defendants were aware or should have been aware of contrary information"). Here, Defendants knew the Construction Loan was already impaired; warning of *potential* judgment and estimation risks while concealing *actual* losses offers no protection. *See In re Estee Lauder Co., Inc. Sec. Litig.*, No. 23-CV-10669 (AS), 2025 WL 965686, at *6-7 (S.D.N.Y. Mar. 31, 2025) (safe harbor inapplicable where predictions are based on "misrepresentations of the present-day facts"); *In re Avon Sec. Litig.*, No. 19 CIV. 01420 (CM), 2019 WL 6115349, at *15 (S.D.N.Y. Nov. 18, 2019) ("the PSLRA's safe harbor provision does not protect optimistic statements about future performance for which defendant have no basis, and where they already know 'that certain risks have become reality.'"). Furthermore, loan loss reserves are not "forward-looking" statements subject to the safe harbor as they are statements of existing financial condition based on past and current data. *Freudenberg*, 712 F. Supp. 2d at 193-94 (S.D.N.Y. 2010) (finding "Loan Loss Allowances Are Not Projections").

**B. The Amended Complaint Pleads a Strong Inference of Scienter.**

    *1. Plaintiff Alleges Strong Circumstantial Evidence of Knowledge and Recklessness.*

To plead scienter, a plaintiff need not produce a "'smoking gun . . . or even the most plausible of competing inferences.'" *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 451 (S.D.N.Y. 2019). Rather, allegations that a defendant "knew facts or had access to information suggesting that their public statements were not accurate" or "failed

to check information [that] they had a duty to monitor" are sufficient. *Emps.' Ret. Sys. of Gov't of V.I. v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015). The Court must weigh these facts collectively, rejecting Defendants' attempt to scrutinize individual allegations.

Here, the circumstantial evidence of recklessness from the facts known by Defendants is overwhelming and is sufficient to allege scienter even without a specific motive. *See In re Virtu Fin., Inc. Sec. Litig.*, 770 F. Supp. 3d 482, 524-26 (E.D.N.Y. 2025) (finding recklessness adequately alleged in absence of motive and opportunity). Defendants' detailed public statements additionally demonstrate they possessed contemporaneous facts and understood the Construction Loan and Mosaic Portfolio's nuances. *See, e.g.*, ¶¶97-99; 108, 143, 192, 259-79. This detailed knowledge supports a strong inference of scienter. *See e.g., In re Gen. Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367, 395 (S.D.N.Y. 2012) (finding scienter when CFO could provide "detailed accounts" to investors of delinquency rates, loan sizes, and loss reserves it was "highly improbable" they did not know of borrower issues and CEO gave knowledgeable statements evidencing his "deep understanding" of defendant's finances); *see also City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 477 F. Supp. 3d 123, 136 (S.D.N.Y. 2020) (finding scienter adequately alleged despite not identifying specific reports defendants had access to when defendant's representative admitted knowledge of information). Thus, Plaintiff's allegations establish Defendants' knowledge, or, at minimum, that Defendants had "access to information contradicting their public statements'" that establishes their recklessness. *See, e.g., In re Tronox, Inc. Sec. Litig.,* No. 09 CIV. 6220 (SAS), 2010 WL 2835545, at *9-10 (S.D.N.Y. June 28, 2010) (finding scienter adequately alleged when defendants had access to contradictory information concerning reserve estimates).

Defendants argue that the fraud is illogical due to the timing and in light of share repurchases and absence of insider stock sales. Br. at 21. Defendants' argument ignores the reality

of the scheme. Defendants delayed the inevitable as long as possible. The appraisals were commissioned only when the Construction Loan's maturity (Dec 31, 2024) made foreclosure undeniable. The fact that the scheme had an expiration date does not absolve Defendants of liability. *See, e.g. In re Manhattan Inv. Fund Ltd.,* 397 B.R. 1, 12 n.16 (S.D.N.Y. 2007) (explaining Ponzi perpetrators know the scheme will collapse). While *Frankfurt-Trust* notes that buybacks can weigh against scienter, they are not a safe harbor for fraud, especially when they are meant to prop up the stock. *See Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 225 (S.D.N.Y. 2018). Here, Defendants' repurchases were an existing investment strategy that commenced prior to the fraud to bolster the stock price that also materially offset the decrease to net book value and the stock price reaction to the announcement of the fraud. *See* ¶¶158, 231, 249.

### 2. Confidential Witnesses Corroborate Defendants' Knowledge.

A plaintiff must allege "facts [to] provide an adequate basis for believing that the defendants' statements were false" and must "describe[] in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Novak*, 216 F.3d at 313-14. Plaintiff satisfies this standard with accounts from four CWs, most notably CW1, who confirm Defendants' scienter. ¶¶81-92.

CW1 confirms that the Portland Project was Ready Capital's "biggest asset", was discussed at the Board level, and that loan reserves were approved quarterly with Defendants Ahlborn and Zausmer in attendance. ¶¶81-86. Crucially, CW1 provided Ahlborn with monthly reports on the virtually non-existent condo sales. ¶¶81, 86. This direct reporting relationship eviscerates Defendants' argument (Br. at 15-16) that CW1 lacked contact with the Individual Defendants.

Defendants' other attacks on CW1 fail. Their claim that CW1 called the project "structurally sound" (Br. at 13) ignores CW1's qualification that this soundness was "significantly undermined" by the project's financial issues. ¶83. Further, the fact that CW1 left in April 2024

23

(Br. at 14) is irrelevant as this presupposes that a Defendants' knowledge magically disappears when a CW leaves a company. *See Cornwell v. Credit Suisse Grp.*, 689 F. Supp. 2d 629, 638 (S.D.N.Y. 2010) (finding pre-class period confidential witness reports relevant to class period scienter allegations because the problems identified earlier remained pertinent to defendants' public statements); *Signet*, 2018 WL 6167889, at *14 (finding that challenges to the "probative force" of a CW who leaves before the Class Period as improper at the motion to dismiss stage). Thus, Defendants' attempt to discredit CW1's statements (Br. at 14) are unavailing and distinguishable. *Campo v. Sears Holdings Corp.*, 635 F. Supp. 2d 323, 335 (S.D.N.Y. 2009) (relying on CWs discussing stale reports from a discontinued department); *Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d at 352 (finding "allegations about an unspecified time period cannot supply specific contradictory facts available to Defendants at the time of an alleged misstatement").

### 3.   The "Core Operations" Doctrine Supports a Strong Inference of Scienter.

"If a plaintiff can plead that a defendant made false or misleading statements when contradictory facts of critical importance to the company either were apparent, or should have been apparent, an inference arises that high-level officers and directors had knowledge of those facts by virtue of their positions with the company." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489 (S.D.N.Y. 2004). Here, the Construction Loan was Ready Capital's single largest asset, contributed $0.11 EPS – roughly 44% of its dividend – and 25% of its stockholders' equity. ¶¶5, 71, 227, 268. Given that Ready Capital was managed by Waterfall with a small team of key employees (¶¶280-82), it is "virtually inconceivable" that Defendants were unaware that the Mezzanine Loan was in default and that the value of Portland Project was materially impacted by the continuing downturn in the Portland market and non-existent condominium sales until the appraisal arrived in January 2025. *LuxUrban*, 2025 WL 2097951, at *22. Courts routinely infer knowledge where, as here, the asset actively monitored is "critical" to the company. *Id.*; *In re Avon*,

24

2019 WL 6115349, at *20 (finding where the company actively monitored delinquencies, "it would be absurd to suggest that [the company's] senior management was unaware of a widespread delinquency problem in the company's single largest market.").

### C. The Amended Complaint Adequately Alleges Loss Causation.

For loss causation, "there is no heightened pleading standard." *Gimpel v. The Hain Celestial Grp., Inc.*, 156 F.4th 121, 151 (2d Cir. 2025). To plead loss causation, Plaintiff "must simply give . . .'some indication' of the actual loss suffered and . . . a plausible causal link between the loss and the alleged misrepresentations" and the "burden is not a heavy one." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 187 (2d Cir. 2015).

Here, Plaintiff alleges a direct, causal connection: investors were "shocked" when Ready Capital announced a "massive $130 million" loss reserve on March 3, 2025. *E.g.*, ¶9. This announcement also revealed to the market that Defendants' prior assurances of "improving metrics" and "performance" and "no onetime items" affecting dividends were false. This "constitutes a sufficient foundation for loss causation allegations." *See LuxUrban* 792 F. Supp. 3d at 446 (finding loss causation where disclosure "showed the market that defendants' 'prior statements were not entirely true or accurate'").

### D. Plaintiff has Adequately Alleged a Claim under Section 20(a)

The Amended Complaint adequately pleads a Rule 10b-5 violation. Because Defendants seek dismissal of the Section 20(a) claim solely on the basis that no primary violation was alleged, their Motion must be denied. *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 170 (2d Cir. 2000) (remanding § 20(a) claim where primary Rule 10b-5 violation was sufficiently pleaded).

## V.    CONCLUSION.

For these reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety.

Dated: January 9, 2026                          Respectfully submitted,


                                                **LEVI & KORSINSKY, LLP**

                                                */ s / Nicholas Porritt*
                                                Nicholas I. Porritt
                                                33 Whitehall Street, 27th Floor
                                                New York, NY 10004
                                                Tel: (202) 363-7500
                                                Fax: (212) 363-7171
                                                Email: nporritt@zlk.com

                                                Alexander A. Krot III (*pro hac vice* application
                                                forthcoming)
                                                1101 Vermont Ave, NW Suite 800
                                                Washington, DC 20005
                                                Tel: (202) 524-4290
                                                Fax: (212) 363-7171
                                                Email: akrot@zlk.com

                                                *Counsel for Lead Plaintiff Allan T. Parr Jr.*
                                                *and Lead Counsel for the Class*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2026, I electronically filed the foregoing Memorandum of Law in Opposition To Defendants' Motion To Dismiss The Consolidated Amended Complaint by using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record.


*/s/ Nicholas Porritt*
Nicholas I. Porritt