## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE READY CAPITAL CORPORATION SECURITIES LITIGATION | Case No. 1:25-cv-01883-PAE |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED COMPLAINT**

i

TABLE OF CONTENTS

PAGE

I.    THE CAC FAILS TO PLEAD FALSITY OR MATERIALITY. ........................................................ 1

II.   DEFENDANT ZAUSMER DID NOT MAKE ANY CHALLENGED STATEMENTS. ......................... 8

III.  THE CAC FAILS TO PLEAD SCIENTER. ............................................................................. 8

<u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abramson v. NewLink Genetics Corp.*,
   965 F.3d 165 (2d Cir. 2020)..................................................................................................2

*Amorosa v. Gen. Elec. Co.*,
   21-cv-3137, 2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022) .....................................................6

*Burr v. Equity Bancshares, Inc.*,
   No. 19-cv-4346, 2020 WL 6063558 (S.D.N.Y. Oct. 14, 2020)...................................... passim

*Chapman v. Mueller Water Prods., Inc.*,
   466 F. Supp. 3d 382 (S.D.N.Y. 2020)....................................................................................5

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017) ................................................................................................3

*City of Omaha Civilian Emps. Ret. Sys. v. CBS Corp.*,
   679 F.3d 64 (2d Cir. 2012)....................................................................................................6

*Damri v. Liveperson, Inc.*,
   772 F. Supp. 3d 430 (S.D.N.Y. 2025).....................................................................................9

*Deluca v. GPB Auto. Portfolio L.P.*,
   No. 19-cv-10498, 2020 WL 7343788 (S.D.N.Y. Dec. 13, 2020) .............................................6

*Harris v. AmTrust Fin. Servs.*,
   135 F. Supp. 3d 155 (S.D.N.Y. 2015).....................................................................................6

*Hensley v. IEC Elecs. Corp.*,
   No. 13-cv-4507, 2014 WL 4473373 (S.D.N.Y. Sep. 11, 2014) .............................................10

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 16-cv-6728, 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018)...............................................3

*In re UiPath, Inc. Sec. Litig.*,
   No. 23-cv-7908, 2025 WL 2806713 (S.D.N.Y. Oct. 2, 2025)..................................................9

*Marcu v. Cheetah Mobile Inc.*,
   No. 18-cv-11184, 2020 WL 4016645 (S.D.N.Y. July 16, 2020)............................................10

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)..................................................................................................7

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015)......................................................................................................1, 2, 3

*Police & Fire Ret. Sys. City of Detroit v. Argo Grp. Int'l Holdings*,
  No. 22-cv-8971, 2024 WL 5089970 (S.D.N.Y. Dec. 12, 2024)..................................................7

*Police & Fire Ret. Sys. of Detroit v. La Quinta Holdings Inc.*,
  No. 16-cv-3068, 2017 WL 4082482 (S.D.N.Y. Aug. 24, 2017)................................................8

*Reilly v. U.S. Physical Therapy, Inc.*,
  No. 17-cv-2347, 2018 WL 3559089 (S.D.N.Y. July 23, 2018).................................................10

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)......................................................................................................1

*SEC v. Rio Tinto PLC*,
  No. 17-cv-7994, 2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019)................................................3

*Siegel v. Bos. Beer Co., Inc.*,
  No. 21-cv-7693, 2022 WL 17417111 (S.D.N.Y. Dec. 5, 2022) ................................................2

*Sjunde AP-Fonden v. GE*,
  417 F. Supp. 3d 379 (S.D.N.Y. 2019)........................................................................................4

*Touchstone Strategic Tr. v. Gen. Elec. Co.*,
  No. 19-cv-1876, 2022 WL 4536800 (S.D.N.Y. Sep. 28, 2022) ...............................................6

*Tyler v. Liz Claiborne*,
  814 F. Supp. 2d 323 (S.D.N.Y. 2011)......................................................................................10

*Xie v. Nano Nuclear Energy Inc.*,
  No. 24-cv-6057, 2026 WL 63715 (S.D.N.Y. Jan. 8, 2026) ......................................................9

*zCap Equity Fund LLC v. LuxUrban Hotels Inc.*,
  792 F. Supp. 3d 407 (S.D.N.Y. 2025).......................................................................................7

STATUTES

15 U.S.C.S. § 78u-4(b)(1)................................................................................................................8

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)...........................................1, 8, 10

Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a)..................................10

iv

## CITATION CONVENTIONS

"CAC": Plaintiff's Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws, filed September 8, 2025 (Dkt. 39)

The "Company": Defendant Ready Capital Corporation

"CW": Confidential Witness

"CW1": The CW identified in paragraph 81 of the CAC

"Defendants": Defendants Ready Capital Corporation, Thomas E. Capasse, Andrew Ahlborn, and Adam Zausmer

"Exchange Act": The Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq*.

"GAAP": Generally Accepted Accounting Principles

"MTD" or "opening brief": Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Consolidated Amended Complaint, filed November 10, 2025 (Dkt. 43)

"Opp." or "opposition": Plaintiff's Opposition to Defendants' Motion to Dismiss the Consolidated Amended Complaint, filed January 9, 2026 (Dkt. 45)

"Plaintiff": Lead Plaintiff Allan T. Parr Jr.

"Portland Project": The mixed-use development in Portland, Oregon known as "Block 216"

"PSLRA": Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4, *et seq*.

"Ready Capital": Defendant Ready Capital Corporation

"SEC": United States Securities and Exchange Commission

"Section 20(a)": Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a)

Plaintiff's opposition confirms what Defendants already established: the CAC fails to state an actionable securities fraud claim. Plaintiff points to no facts showing that any Defendant disbelieved the challenged opinion statements or failed to disclose verifiable facts implied by those statements that made them misleading. Instead, the opposition repackages the same allegations that Defendants already demonstrated were legally insufficient to plead falsity. Plaintiff's scienter arguments are equally deficient. The opposition offers no motive, no particularized facts about what any Defendant actually knew or believed, no link between any Defendant and information that would have made the challenged statements misleading, and no allegations that overcome more compelling nonfraudulent inferences. The CAC should be dismissed with prejudice.

## I.      The CAC Fails to Plead Falsity or Materiality.

Under the PSLRA, the CAC "must demonstrate *with specificity* why and how" *each* challenged statement was both false and material when made. *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) (emphasis added). Because the claims here target opinions, the CAC must also satisfy *Omnicare*'s heightened pleading standards, something that is "no small task for an investor." (*See* MTD at 9-17 (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015).) Defendants established in their opening brief that the *three* unique paragraphs of the CAC that attempt to address falsity fall short of meeting these requirements. (*See* CAC ¶¶ 198-99, 215-17.) Plaintiffs' opposition does nothing to change that.[1]

Plaintiff starts by accusing Defendants of "fail[ing] to grapple with the second and third prongs" of *Omnicare* (Opp. at 12), but it is the CAC that never attempts to address those prongs.

---

[1] Plaintiff attempts to avoid *Omnicare* by arguing that Defendants have merely "label[ed]" the challenged statements as "opinions" and by referring to *Omnicare* as a "technical legal argument[ ]." (*See* Opp. at 2, 11.) That rhetoric does not change the law. *Omnicare* controls. *See Burr v. Equity Bancshares, Inc.*, No. 19-cv-4346, 2020 WL 6063558, at *4 (S.D.N.Y. Oct. 14, 2020) (applying *Omnicare* to claims that "hinge[d] on . . . allegation that the corporation should have made a provision for loss on [challenged] loans sooner than it did").

The CAC does not even acknowledge that the challenged statements are opinions, much less identify any false embedded facts within the opinions (under prong two) or explain how they "implied facts that can be proven false" (under prong three). *Abramson v. NewLink Genetics Corp.*, 965 F.3d 165, 175 (2d Cir. 2020). Instead, it points to "qualitative and quantitative factors" that supposedly "affected the value" of the Portland Project and claims the loan was over-valued and under-reserved "as a result." (*See* CAC ¶¶ 198-99, 215-16.) That is not a prong-two or prong-three claim. *See Siegel v. Bos. Beer Co., Inc.*, No. 21-cv-7693, 2022 WL 17417111, at *7 (S.D.N.Y. Dec. 5, 2022) (dismissing claims where complaint failed to "plead that . . . opinion[s] contained embedded factual statements that were false or implied facts that were false").

Plaintiff repeats this refrain in its opposition, asserting the CAC demonstrates falsity because it is "replete" with "qualitative and quantitative" factors about the Portland Project that purportedly "did not align" with the challenged opinions. (Opp. at 12.) Even accepting these allegations as true, the "factors" do not make the opinions false. "Reasonable investors understand that opinions sometimes rest on a weighing of competing facts" and, thus, "do[ ] not expect that every fact known to an issuer supports its opinion." *Omnicare*, 575 U.S. at 190. For this reason, "[s]tatements of opinion, like a lender's assessment of the necessary allowance for loan losses, are not misleading merely because the lender fails to disclose 'some fact cutting the other way.'" *Burr*, 2020 WL 6063558, at *5 (quoting *Omnicare*, 575 U.S. at 189). The "factors" cited in the CAC are precisely the sort that do not transform an opinion into a misstatement under *Omnicare*.

For Plaintiff's theory to work, the CAC needed to demonstrate ***with specificity*** that Ready Capital disregarded information when assessing the loan (in a way that contradicted facts implied by those opinions) and/or that Defendants did not honestly believe the loan was appropriately valued or reserved. The CAC does none of that. It identifies no assumptions, inputs, or

contemporaneous analyses used to value or set reserves for the loan and alleges no facts showing that the cited "factors" were disregarded.  Instead, it points to the "factors" and then assumes, without support, that Ready Capital must not have considered them.  (*See* CAC ¶¶ 198-99, 215-16.)  That fails under *Omnicare*.  "Without identifying what negative factors and assumptions Defendants already incorporated into their . . . valuations, Plaintiff cannot demonstrate that Defendants were aware of additional 'facts and circumstances' that would have indicated that 'the fair value of the [Portland Project] may be less than [the loan's] carrying amount.'"  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017); *see also SEC v. Rio Tinto PLC*, No. 17-cv-7994, 2019 WL 1244933, at *8 (S.D.N.Y. Mar. 18, 2019) ("[T]he Second Circuit has found that allegations that individuals possess facts which should have led them to test assets for impairment do not sufficiently allege that the individuals actually believed an asset's value was overstated."); (MTD at 11-14 (citing additional cases)).

. (Opp. at 13.)  There, the court credited detailed, firsthand accounts from confidential witnesses that the defendants were not only "aware" of alleged problems with the company's sub-prime credit portfolio, but also (1) "***chose to disregard internal warnings***" about those problems; (2) refused to raise loss reserves to "***avoid[ ] a material impact to the company's 'bottom line'***"; and (3) implemented a policy of "***aggressively push[ing] credit on customers . . . who did not want it and could not afford it***."  *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-cv-6728, 2018 WL 6167889, at *13 (S.D.N.Y. Nov. 26, 2018) (emphasis added).  Nothing comparable is alleged here.[2]  To the contrary, CW1 confirms the Portland Project loan was evaluated through a "highly

---

[2] Nowhere does Plaintiff argue that Defendants "disregard[ed] internal warnings," as in *Signet*. (*See* Opp. at 14 ("*Signet* held that qualitative opinion statements were actionable because executives 'misrepresented their beliefs' by '***disregard[ing] internal warnings***' . . . . ***Defendants were aware of the severe issues facing the Construction Loan***, a fact confirmed by CW1.") (emphasis added).)

formalized" quarterly "valuation[ ]" process involving "detailed" discussion of "loan-by-loan" data, documentation of the "factors" cited in the CAC, and confirmation at "each stage" that this information had been "reviewed and approved." (CAC ¶¶ 83-86.) CW1 forecloses any suggestion that the "factors" were ignored.

In recognition of these deficiencies, Plaintiff pivots to a new theory not articulated in the CAC: that the challenged statements were false, not because Defendants disregarded the cited "factors," but because they relied on outputs generated from a third-party vendor ("Trepp"), rather than performing a "loan-by-loan" analysis of the Portland Project loan. (Opp. at 14 (citing CAC ¶ 84).)[3]  That argument misstates CW1's allegations.[4]  Although CW1 purportedly stated that management "generally" relied on Trepp's outputs, CW1 does not allege they did this for the Portland Project loan, that they relied on Trepp to the exclusion of other relevant information, or that they otherwise failed to conduct a meaningful assessment of the loan. (*See* CAC ¶¶ 83-86.)[5]

More significantly, nowhere does CW1 allege that reliance on Trepp was in any way improper or that Defendants ever received information showing the Portland Project loan was not accurately valued or reserved. Those omissions speak volumes, particularly given that: (1) Ready Capital publicly disclosed its reliance on Trepp's loss models;[6] (2) the Company warned investors

---

[3] Although the CAC mentions Trepp in one paragraph, it nowhere alleges that reliance on Trepp made any statement false or misleading. (*Compare* CAC ¶ 84 *with* CAC ¶¶ 198-99, 215-17.)

[4] Even if Plaintiff's spin were accepted as true, CW1 could not shed light on what did or did not occur during the class period; CW1 left the Company months before it began. (*See* CAC ¶ 81.)

[5] *See Sjunde AP-Fonden v. GE*, 417 F. Supp. 3d 379, 397 (S.D.N.Y. 2019) (rejecting claims challenging reserve estimates that did not establish defendants "failed to undertake a 'meaningful factual inquiry' into its reserves" or "lacked 'any reasonable basis in fact' for their estimates" and where complaint "detail[ed] a complex . . . process for calculating . . . reserve estimates").

[6] (*See* MTD Ex. 10 ("2023 10-K") at 109 ("The Company utilizes loan loss forecasting models for estimating expected life-time credit losses, at the individual loan level, for its loan portfolio. The [CECL] forecasting methods used by the Company include (i) a probability of default and loss

that "significant judgment is required when evaluating loans for impairment," that reserves will "vary from period to period," and that "actual results over time could be materially different," (2023 10-K at 91);[7] and (3) Ready Capital's auditor evaluated the Company's loan-loss and collateral valuation processes and issued a clean audit opinion. (*See* MTD at 17, n.11.)

Plaintiff's assertion that Ready Capital was planning to foreclose, rather than refinance, the Portland Project loan, does not change the analysis. (*See* Opp. at 8, 16.) Plaintiff again points to an unspecified "event of default" and the January 2025 appraisals in support of this argument (*see* Opp. at 8; CAC ¶ 217), but that allegation rests on Plaintiff's mistaken premise that Ready Capital could only "conduct a reappraisal . . . in the event of default" (CAC ¶ 217), a critical foundational error Plaintiff does not even attempt to account for in the opposition. (*See* MTD at 7-8.)[8] Plaintiff also points to an alleged nonpayment of interest on a "mezzanine" loan to another lender (Opp. at 8), but this allegation—like many others in the opposition—is never offered as a reason for falsity.[9]

---

[7] *See Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 404-05 (S.D.N.Y. 2020) (dismissing claims challenging warranty reserves where company warned investors that reserves were "inherently subjective" and "could change 'as better information regarding warranty costs becomes available'"); *Burr*, 2020 WL 6063558, at *6 (dismissing claims challenging loan loss reserves where company was "forthright with investors that its assessment of allowances for loan losses involved a subjective, multi-factor inquiry" and holding that a "reasonable investor would expect that management might determine a loan was not impaired even where a borrower had cash-flow problems if other factors caused management to believe that repayment was likely").

[8] Plaintiff concedes the Company did not attempt to acquire the Portland Project through a "deed-in-lieu" in February 2024, as alleged. (*See* Opp. at 2.) Plaintiff dismisses this as a "typographical" error and "immaterial," but it is neither. (Opp. at 2.) The CAC relies directly on this "fact" to plead falsity. (*See* CAC ¶ 217 (alleging statements were false because "Ready Capital was already purporting to . . . acquire the underlying Portland project collateral through a deed-in-lieu").)

[9] Plaintiff also points to alleged loan modifications, the loan's "performing" classification, and the recognition of "payment-in-kind" interest. (*See* Opp. at 4-5.) Although versions of these allegations appear in the CAC, none are presented as reasons for falsity. (*See* CAC ¶¶ 198-99,

given default method using underlying third-party CMBS/CRE loan databases with historical loan losses and (ii) probability weighted expected cash flow method, depending on the type of loan and the availability of relevant historical market loan loss data.").)

(*See* CAC ¶¶ 198-99, 215-17.)  It also rests on untested "information and belief" statements made in other lawsuits (*see* CAC ¶¶ 169-71), which cannot sustain a fraud claim.  *See Deluca v. GPB Auto. Portfolio L.P.*, No. 19-cv-10498, 2020 WL 7343788, at *16 (S.D.N.Y. Dec. 13, 2020) ("[P]laintiffs cannot rely on allegations from other lawsuits to plead legally sufficient fraud claims."); *Touchstone Strategic Tr. v. Gen. Elec. Co.*, No. 19-cv-1876, 2022 WL 4536800, at *2 (S.D.N.Y. Sep. 28, 2022) ("Courts 'generally do not consider . . . parroted allegations for which counsel has not conducted independent investigation.'").[10]  Further, the allegedly missed interest payments are not connected to any Defendant and have no bearing on whether foreclosure was "probable."  They are just as consistent with refinancing as they are foreclosure.[11]

Finally, even assuming, as Plaintiff argues, that GAAP required the Company to "remeasure" the "fair value" of the Portland Project earlier (*see* Opp. at 16),[12] the CAC does not

---

215-17.)  Even if they were, they fail for the same reasons as Plaintiff's other allegations—none bear on whether the loan was properly valued.  (*See* MTD at 10-11.)  Further, much of this information was disclosed.  (*See*, *e.g.*, CAC ¶ 209 (acknowledging disclosure on Q3 2024 earnings call that "PIK . . . [was] coming from construction loans acquired in the Mosaic transaction."); 2023 10-K at 19 ("A loan is considered to be performing if the borrower is current on all contractual payments due for principal and interest during the most recent 90 days.").)

[10]  The CAC acknowledges that Plaintiff and its counsel relied only on "pertinent court filings." (CAC ¶ 2.)  It does not allege they interviewed the individual who made these statements or spoke with litigation counsel in that case.  *See Amorosa v. Gen. Elec. Co.*, 21-cv-3137, 2022 WL 3577838, at *2-3 (S.D.N.Y. Aug. 19, 2022) ("disregarding" allegations copied from another lawsuit where plaintiff's investigation was "limited to reviewing" papers from other actions and therefore had "verified none of what he copied").

[11] *See Burr*, 2020 WL 6063558, at *5 (dismissing claims challenging loan loss reserves where allegations suggested "other, at least as likely explanations," including that "the corporation expected to recoup the value of its loans [through] sale or liquidation").

[12] Whether GAAP required the Company to "remeasure" the Portland Project loan sooner is itself a matter of opinion that does not support a securities fraud claim.  *See Harris v. AmTrust Fin. Servs.*, 135 F. Supp. 3d 155, 172 (S.D.N.Y. 2015) ("In the absence of a restatement or allegations pointing to objective facts that [d]efendants' accounting methods violated GAAP, carping about [d]efendants' application of GAAP . . . d[oes] not permit the [c]ourt to infer that the [d]efendants committed accounting fraud."); *City of Omaha Civilian Emps. Ret. Sys. v. CBS Corp.*, 679 F.3d

allege that it failed to do this or point to any information (from CW1 or anywhere else) that would support such an allegation. (*See* CAC ¶¶ 199, 216.)[13] Instead, Plaintiff again appears to assume, without factual support, that the Company had no basis to assess "fair value" earlier. The CAC likewise does not allege that any prior assessment showed the Portland Project's "fair value" had fallen below the loan's "amortized cost basis"—the only circumstance that would have triggered a write-down. (*See* CAC ¶ 47 ("For [collateral-dependent] loans . . . we measure the expected losses based on the difference between the fair value of the collateral . . . and the amortized cost basis of the loan.").)[14] Beyond its hindsight reliance on the January 2025 appraisals, the CAC's only attempt to quantify the Portland Project's value is the allegation that the loan had an "80%" loan-to-value ratio. (CAC ¶¶ 199, 216.)[15] By definition, that means collateral value exceeded the loan's carrying amount and did not require a write-down. This alone defeats Plaintiff's claims. *See Burr*, 2020 WL 6063558, at *5 (dismissing claims challenging loan loss reserves where, "by

---

64, 68 (2d Cir. 2012) ("[E]ven if the . . . complaint did plausibly plead that defendants were aware of facts that should have led them to begin impairment testing earlier, such pleading alone would not suffice to state a securities fraud claim. . . ."); (MTD at 11-14 (citing additional cases)).

[13] The CAC alleges only that Ready Capital was required to "remeasure the [collateral] at the fair value." (CAC ¶¶ 199, 216.) There is no allegation that Ready Capital failed to do this.

[14] Plaintiff claims the CAC "specifically alleges that Defendants possessed or received . . . information showing losses would exceed the [loan's] 'minimal reserves.'" (Opp. at 16 (citing CAC ¶¶ 84, 114, 116, 164, 273).) Nothing in the cited paragraphs supports this. "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).

[15] Plaintiff again cites the write-down as evidence of falsity (*see* Opp. at 15), but the fact "that defendants later revised reserves that [they] previously had deemed adequate 'provides absolutely no reasonable basis for concluding that defendants did not think reserves were adequate at the time.'" *Police & Fire Ret. Sys. City of Detroit v. Argo Grp. Int'l Holdings*, No. 22-cv-8971, 2024 WL 5089970, at *8 (S.D.N.Y. Dec. 12, 2024). Plaintiff cites *LuxUrban* in support, but *LuxUrban* involved a "[r]estatement [that] required . . . substantial, and downward, adjustments" and "disclaimed . . . earlier representation[s]," which the court found was an "admission . . . that earlier statements were false when made." *zCap Equity Fund LLC v. LuxUrban Hotels Inc.*, 792 F. Supp. 3d 407, 438-39, 423 (S.D.N.Y. 2025). Here, there was a clean audit opinion and no restatement.

7

the [complaint's] own allegation, no impairment . . . was required").[16]

## II.    Defendant Zausmer Did Not Make Any Challenged Statements.

The statements about an anticipated $0.25 dividend being a "good baseline" and there being "no one-time items" were not made by Adam Zausmer, as alleged.  (*See* MTD at 22; CAC ¶ 210.)  Plaintiff identifies for the first time a version of the earnings call transcript attributing the statements to Mr. Zausmer.[17]  That transcript, however, expressly disclaims its own "accuracy," and Plaintiff does not contend he listened to the earnings call to verify the transcript's accuracy. The Company's recording of the earnings call, and the Declaration of Andrew Ahlborn submitted herewith, removes all doubt: Mr. Ahlborn, not Mr. Zauzmer, made these statements.[18]  Because these are the only statements attributed to Mr. Zausmer, all claims against him should be dismissed.

## III.    The CAC Fails to Plead Scienter.

The CAC fails to plead a strong inference of scienter for multiple reasons: (1) it alleges no

---

[16] As demonstrated, the statements regarding anticipated "onetime items" and dividends "moving into Q4" and the "expectation . . . that a large portion" of the Mosaic loans would turn into "cash paying investments" are protected by the PSLRA safe harbor, and the statements about "strong" and "improving" credit performance are nonactionable puffery.  (*See* MTD at 18-19 (citing *Burr*, 2020 WL 6063558, at *6 (dismissing claims challenging statements that "credit quality" was "strong" and had "improved" because statements did not provide "specific, falsifiable details about the corporation's financial condition" and were "too general to cause a reasonable investor to rely upon them")).)  Plaintiff argues the statements were not forward-looking, but they were.  (*See* MTD Ex. 8 at 6, 12 (responding to questions about "expectations . . . over the next few quarters" and "sequential change moving into Q4").)  Plaintiff's assertions that cautionary language was not "meaningful," or that puffery was false, due to issues with the Portland Project are based on the same flawed theory as the other allegations.

[17] The transcript is not identified in the CAC, which was required to "state with particularity all facts" on which "information and belief" allegations were formed.  15 U.S.C.S. § 78u-4(b)(1).

[18] The recording is available at: https://s2.q4cdn.com/309998371/files/doc_events/2024/Nov/08/ Ready-Capital-Corporation-NYSE_RC-Nov-08-2024-Audio.mp3.  The relevant statements from Mr. Ahlborn begin at 30:34 of the recording and can be compared to statements from Mr. Zausmer at 30:14.  Defendants can provide the recording in an alternative format if the Court prefers.  *See Police & Fire Ret. Sys. of Detroit v. La Quinta Holdings Inc.*, No. 16-cv-3068, 2017 WL 4082482, at *8 n.3 (S.D.N.Y. Aug. 24, 2017) (considering recording on motion to dismiss where recording showed "figure referenced in Plaintiff's transcript [was] a typographical error").

facts indicating that Defendants disbelieved the challenged opinions; (2) it cites no internal reports or CW allegations where Defendants were told the Portland Project loan was over-valued or under-reserved; (3) it challenges financial results that were never restated and collateral valuation and loan loss processes that received a clean audit opinion; (4) it offers no motive; (5) it points to no stock sales; (6) it posits a nonsensical fraud theory that would inevitably be exposed within weeks by appraisals and disclosures Defendants themselves initiated; and (7) it is undercut by the far more compelling inference that Defendants "appropriately made . . . adjustments . . . based on new information [they] acquired" through the January 2025 appraisals.  (*See* MTD at 16-17, 20-21.)

In response, Plaintiff asserts for the first time that Defendants had "a motive to . . . preserve Ready Capital's dividend." (Opp. at 3.)  That theory is not alleged in the CAC, nor is it actionable. *See Damri v. Liveperson, Inc.*, 772 F. Supp. 3d 430, 467 (S.D.N.Y. 2025) ("To raise a strong inference of scienter through 'motive and opportunity,' a plaintiff must allege that the defendant . . . 'benefitted in some concrete and personal way from the purported fraud.'").  With no viable motive, Plaintiff next claims the CAC offers "overwhelming" circumstantial evidence of "recklessness." (Opp. at 22.)  The opposition, however, does not point to any such evidence, nor does it attempt to tie the evidence to any Defendant.  Where a complaint points to "no evidence of motive, 'the strength of the circumstantial allegations must be correspondingly greater'" to plead scienter.  *Xie v. Nano Nuclear Energy Inc.*, No. 24-cv-6057, 2026 WL 63715, at *7 (S.D.N.Y. Jan. 8, 2026).[19]  The CAC falls far short of that standard.

Plaintiff next points to allegations that Messrs. Ahlborn and Zausmer (there is no mention

---

[19]  A strong inference of recklessness requires well-pleaded allegations of "highly unreasonable conduct representing an extreme departure from the standards of ordinary care and approximating actual intent." *In re UiPath, Inc. Sec. Litig.*, No. 23-cv-7908, 2025 WL 2806713, at *8 (S.D.N.Y. Oct. 2, 2025).  None of that is alleged for any Defendant.

of Mr. Capasse) were aware of the "nuances" of the Portland Project loan and were involved in setting reserves. (Opp. at 22.) But this has absolutely no bearing on whether or not they believed the loan was properly valued or reserved. Plaintiff again relies on CW1, but CW1 does not allege that anything about the loan's valuation or reserves was improper, that the "factors" cited in the CAC were ignored or disregarded, or that any Defendant was aware of anything that called into question the value of the loan or the adequacy of reserves. (*See* MTD at 14-16, 20-21.)

Plaintiff last invokes the "core operations" doctrine, arguing that Defendants must have known the Portland Project's value had been "materially impacted" by the cited "factors." (Opp. at 24-25.) But it is "far from clear that the core operations doctrine remains valid in light of the PSLRA," and even if considered, it is merely "supplementary," not an "independent[ ] . . . means to plead scienter." *Marcu v. Cheetah Mobile Inc.*, No. 18-cv-11184, 2020 WL 4016645, at *8 (S.D.N.Y. July 16, 2020). Further, the doctrine applies only when "the operation . . . constitutes nearly all of a company's business." *Reilly v. U.S. Physical Therapy, Inc.*, No. 17-cv-2347, 2018 WL 3559089, at *18 (S.D.N.Y. July 23, 2018). Even accepting as true Plaintiff's allegation that the loan was Ready Capital's "largest," it still represented less than 5% of an 1,800-loan, $9.4 billion portfolio. (*See* Opp. at 24.) It was not a "core" operation.[20] Even if it were, awareness of the "factors" says nothing about what Defendants believed.[21]

For each of the foregoing reasons, and those set forth in Defendants' opening brief, the CAC should be dismissed in its entirety, with prejudice.

---

[20] *See*, *e.g.*, *Tyler v. Liz Claiborne*, 814 F. Supp. 2d 323, 342-44 (S.D.N.Y. 2011) (segment representing 16% of company's revenue was not a core operation); *Hensley v. IEC Elecs. Corp.*, No. 13-cv-4507, 2014 WL 4473373, at *5 (S.D.N.Y. Sep. 11, 2014) (acquired company that contributed "only about fifteen percent of . . . total revenue" was not a core operation).

[21] As shown in the opening brief, the CAC fails to plead loss causation or a Section 20(a) claim. (*See* MTD at 22-24.)

Dated: February 9, 2026

Respectfully submitted,

**ALSTON & BIRD LLP**

s/ *Elizabeth Gingold Clark*
Elizabeth Gingold Clark
90 Park Avenue
New York, New York 10016
(212) 210-9400
elizabeth.clark@alston.com

Robert R. Long (admitted *pro hac vice*)
Andrew T. Sumner (admitted *pro hac vice*)
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
(404) 881-7000
robert.long@alston.com
andy.sumner@alston.com

*Attorneys for Defendants*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of February, 2026, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record in the above-referenced case.

**ALSTON & BIRD LLP**

*s/ Elizabeth Gingold Clark*
Elizabeth Gingold Clark
90 Park Avenue
New York, New York 10016
(212) 210-9400
elizabeth.clark@alston.com

*Attorneys for Defendants*